STATE of Wisconsin, Plaintiff-Respondent,

v.

Cornelius R. REED, Defendant-Appellant.†

Court of Appeals

*No. 01–2973–CR. Submitted on briefs June 4, 2002.—Decided July 2, 2002.*

2002 WI App 209

(Also reported in 650 N.W.2d 885.)

† Petition to review denied 9-26-02.

1020

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Stephanie G. Rapkin* of Mequon.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general by *Jeffrey J. Kassel*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Cornelius R. Reed appeals from a judgment entered after a jury convicted him of operating a vehicle without the owner's consent as party to a crime, and possession of a firearm by a felon as party to a crime (and as a habitual criminal), contrary to Wis. Stat. §§ 943.23(1g), 941.29(2), 939.05

and 939.62 (1999–2000).[1] He also appeals from an order denying his postconviction motion. Reed claims: (1) the trial court erred and violated his due process rights when it denied his request to have two defense witnesses, who were in custody at the time of trial, appear in street clothes when they testified; (2) trial counsel provided ineffective assistance for failing to request a cautionary instruction related to the witnesses appearing in jail attire; and (3) the trial court erred when it did not give a cautionary instruction to the jury about the witnesses appearing in jail attire. Because the trial court did not erroneously exercise its discretion when it denied Reed's request to have his witnesses appear in street clothes, and because he failed to demonstrate prejudice on his ineffective assistance of counsel claim and on the trial court's failure to give a cautionary instruction, we affirm.

## I. BACKGROUND

¶ 2. On March 19, 2000, at 5115 West Capitol Drive in Milwaukee, Wisconsin, London Hickman told police that, as she was returning to her car, two men approached her, one of whom was later identified as Reed. Reed flashed a silver-colored handgun and demanded that she give him her money and the car keys to her 1998 Lincoln Navigator. When she did so, the men stole her vehicle and drove away.

¶ 3. Approximately thirty minutes later, police located the Navigator. Reed, who was driving, abandoned the vehicle and fled from police. A police officer observed Reed drop a silver pistol on the sidewalk, which was later recovered. They also observed Reed

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

discard a White Sox jacket as he was running. The jacket was recovered and Hickman positively identified the jacket as the one the car thief was wearing when he took her car. Police eventually captured Reed, and Hickman positively identified him as the car thief. As a result, Reed was charged with operating a vehicle without the owner's consent, while possessing a dangerous weapon as party to a crime, and possession of a firearm by a felon as party to a crime. Both charges carried the habitual criminality penalty enhancer.

¶ 4. Reed pled not guilty and the case was tried to a jury. Before trial, Reed filed notice of his intent to present an alibi defense. His theory was that a man named "BoBo" actually stole the car from Hickman and then rented it to Reed minutes later. He had three witnesses to present his alibi. The first was Keith Payne, who testified that he saw the carjacking occur, and Reed was not the person who stole the car. The second was Patrick Neeley, who testified that he was a passenger in the stolen vehicle when it was stopped by police. He told the jury that he was walking down the street when BoBo pulled up in a Navigator and asked him if he needed a ride. Neeley got into the back seat because there was another man in the front passenger seat. BoBo drove to 45th Street and Lisbon Avenue, where they encountered Reed. BoBo offered to rent the vehicle to Reed for $40, and Reed accepted. BoBo and the man in the front passenger seat exited the vehicle; Reed got into the driver's seat and Neeley got into the front passenger seat. They drove around for a short while and then were pulled over by police. The third witness was Latare Roberts, who testified that BoBo drove up to him in a Navigator and asked him if he

wanted to rent the car. Roberts testified that he refused, and he then saw BoBo approach Reed with the same offer.

¶ 5.    Neeley and Roberts were in custody at the time of the trial, and the defense requested that they be allowed to change into street clothes when they testified. Reed argued that the jury might find the witnesses less credible if they testified in their jail clothes. The trial court denied the request, ruling that it would be inconvenient and create a security risk. At the time of the ruling, the trial court suggested that a limiting instruction could be given with regard to the jail attire. However, at the time the instructions were drafted, the trial court determined that the issue did not "merit[] any further attention from the jury." Reed was convicted. He filed a postconviction motion, which was denied. He now appeals.

## II. DISCUSSION

### A. *Witnesses in Jail Clothes.*

¶ 6.    The main issue in this case is whether the trial court erred by denying Reed's request to allow two of his alibi witnesses, who were in custody at the time, to change into street clothes instead of having to testify in their jail attire. Although there is no Wisconsin case law that directly addresses the issue, we are guided by one case decided by this court, wherein we noted the consensus among appellate courts is that this issue is one best left to the discretion of the trial court. *State v. Brewer*, 195 Wis. 2d 295, 301–02 n.2, 536 N.W.2d 406 (Ct. App. 1995).

¶ 7.    Accordingly, we conclude that the trial court's decision will be reviewed under the erroneous exercise

of discretion standard. If the trial court applied the correct law, after considering the pertinent facts and reaching a reasonable decision, we will not overturn the decision. *State v. Delgado*, 223 Wis. 2d 270, 280–81, 588 N.W.2d 1 (1999).

¶ 8.   In reviewing the trial court's decision, we conclude that it did not erroneously exercise its discretion in denying Reed's request. The trial court denied the request because of the difficulty associated with having the in-custody witnesses brought to the courtroom, but keeping them in separate bullpens to keep them apart. Granting the clothing request would have entailed having the witnesses change clothes in the bullpens, where other in-custody people were waiting. Introducing those items into the bullpens, and allowing the clothing changes would create security risks that outweighed any prejudice to the defendant. The trial court also reasoned that because both of the witnesses had prior convictions which the jury would hear about, seeing them in jail attire would not be overly prejudicial.

¶ 9.   The trial court further explained its exercise of discretion and balancing of factors in its written order denying the postconviction motion. After reviewing the bulk of the law on this issue across the country, the trial court reached three general conclusions. First, the case law makes an important distinction between compelling a *defendant* to testify in jail attire and compelling a *witness* to testify in jail attire. The reason for the distinction is that a defendant has certain constitutional rights and is presumed innocent until proven guilty. "[A] state violates a defendant's right to due process, and therefore the presumption of innocence, when it requires him to appear at trial in

*identifiable* prison clothing." *State v. Clifton*, 150 Wis. 2d 673, 679, 443 N.W.2d 26 (Ct. App. 1989) (citation omitted). Defense witnesses, however, do not share the same "presumption of innocence." Therefore, courts are inclined to allow an "in-custody" defendant to appear in street clothes, and yet not provide the same accommodation to "in-custody" witnesses. *See, e.g., Harrell v. Israel*, 672 F.2d 632, 635 (7th Cir. 1982); *State ex rel. McMannis v. Mohn*, 254 S.E.2d 805, 808–09 (W. Va. 1979).

¶ 10. The second conclusion noted by the trial court is the distinction made between compelling a witness to testify in jail attire versus compelling a witness to testify in shackles, handcuffs, or other restraints. Courts are more concerned about the prejudice that arises from the latter rather than the former. *McMannis*, 254 S.E.2d at 809–10. The reason is that physical restraints raise a specter of dangerousness and may have a more significant effect on the jury's feelings than mere jail attire. *Illinois v. Allen*, 397 U.S. 337, 344 (1970). Moreover, jail attire says little more than what we already permit juries to know about witnesses— whether the witness has been convicted of a crime.

¶ 11. The third conclusion reached by the trial court is that viewing a witness in jail attire is not prejudicial where the jury is permitted to hear testimony that the person has been incarcerated. *United States v. Brooks*, 125 F.3d 484, 499 (7th Cir. 1997). The theory is that "[n]o prejudice can result from seeing that which is already known." *Estelle v. Williams*, 425 U.S. 501, 507 (1976) (citation omitted).

¶ 12. The trial court reasoned, based on the foregoing, that its decision to compel the alibi witnesses to testify in jail attire was a reasonable one, particularly given the security concerns and the fact that one of the

1027

witnesses was currently incarcerated on a conviction related to the case, and the other had been incarcerated before. We agree that the trial court's decision was reasonable based on the totality of facts and circumstances presented in this case. The trial court properly balanced the potential prejudice to the defendant against the security considerations.

### B. Ineffective Assistance.

¶ 13.  Reed next contends his trial counsel was ineffective for failing to request a cautionary instruction relating to the clothing worn by the defense alibi witnesses. We reject his contention.

¶ 14.  To sustain a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *Id.* at 697.

¶ 15.  An attorney's performance is not deficient unless he or she made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. To satisfy the prejudice prong, the appellant must demonstrate that counsel's deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

¶ 16.  Whether counsel's actions constituted ineffective assistance is a mixed question of law and fact. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711

1028

(1985). The trial court's determination of what the attorney did, or did not do, and the basis for the challenged conduct are factual and will be upheld unless they are clearly erroneous. *Id.* at 634. The ultimate conclusion, however, of whether the conduct resulted in a violation of defendant's right to effective assistance of counsel is a question of law for which no deference to the trial court need be given. *State v. Harvey*, 139 Wis. 2d 353, 376, 407 N.W.2d 235 (1987).

¶ 17.  With respect to the "prejudice" component of the test for ineffective assistance of counsel, the defendant must affirmatively prove that the alleged defect in counsel's performance actually had an adverse effect on the defense. *Strickland*, 466 U.S. at 693. The defendant cannot meet his burden by merely showing that the error had some conceivable effect on the outcome. *Id.* Rather, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶ 18.  We dispose of this claim on the prejudice prong of the ineffective assistance test. Assuming that Reed's counsel should have requested a cautionary instruction, we conclude that Reed has failed to demonstrate that the result of the proceedings would have been different. Reed's position is that the jury probably assessed less credibility to his alibi witnesses because they testified in jail clothes. He argues that if the jury had been given a cautionary instruction on this issue, it would have afforded the witnesses more credibility and resulted in his acquittal. We cannot agree.

¶ 19.   Even if a cautionary instruction had been given, there were credibility problems with the alibi witnesses. One was an admitted convicted criminal and the other told the jury that he had been "locked up" before. In addition, the testimony of the alibi witnesses was inconsistent. More significantly, there was other evidence in the case that overwhelmingly pointed to Reed's guilt that would have been unaffected by a cautionary instruction. The eyewitness-victim identified Reed as the car thief. She also identified the jacket Reed was wearing, which Reed took off and dropped as he was fleeing from the police. The fact that Reed fled from police when pulled over in the stolen vehicle supports an inference that he was guilty. Accordingly, even if counsel had requested the cautionary instruction and the trial court read the instruction to the jury, Reed has failed to demonstrate that there is a reasonable probability that the outcome would have been different.

*C. Trial Court Failure to Give Cautionary Instruction.*

¶ 20.   Reed next argues that the trial court should have given a cautionary instruction. He points out that the trial court raised the issue and indicated it would give the limiting instruction, but then failed to do so. We reject this claim.

██

¶ 21.   Like the ineffective assistance claim, even if Reed convinced us that a cautionary instruction should have been given, we conclude that the failure to so charge the jury was harmless error. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

¶ 22.   Given the other credibility problems associated with these witnesses, plus the strength of the evidence pointing to Reed's guilt, there is no reason to

believe that an instruction directing the jurors to disregard the jail clothing would have had any impact on the outcome of this case. As noted above, the witnesses had additional credibility problems aside from the clothing they were wearing. Likewise, Reed was linked to the crime not only by the victim's eyewitness identification, but also by the fact that he was caught driving the stolen vehicle shortly after the hijacking, wearing the same type of jacket as the car thief, and carrying the same type of pistol. Therefore, any failure to give a cautionary instruction was harmless.

*By the Court.*—Judgment and order affirmed.