State of Wisconsin, Plaintiff-Respondent,
v.
Michael D. Kollmann, Defendant-Appellant.
No. 03-3490-CR.
Court of Appeals of Wisconsin.
Opinion Filed: January 19, 2005.
Before Anderson, P.J., Nettesheim and Snyder, JJ.
¶1 PER CURIAM.
Michael D. Kollmann appeals from a judgment convicting him of third-degree sexual assault contrary to WIS. STAT. § 940.225(3) (2001-02)[1] after a jury trial and from an order denying his postconviction motion for a new trial due to ineffective assistance of trial counsel. Because we agree with Kollmann that his trial counsel was ineffective in both her pretrial preparation and trial participation, we reverse the judgment of conviction and the postconviction order and remand for a new trial.
¶2 Tammy W. claimed that in May 2002, Kollmann, her former husband, forcibly performed oral sex on her for ten to fifteen minutes, masturbated to arouse himself and then had forcible penis-vagina intercourse with her, all without her consent. The incident occurred in her bedroom after Kollmann returned their son from a period of physical placement.
¶3 At trial, Tammy W. testified that the evening of the assault started when Kollmann asked her to take their three-year-old son to a previously scheduled haircut. Kollmann met them at the barbershop but did not have any money to pay for the haircut. Kollmann later delivered the child to Tammy W.'s home and stayed for dinner and while Tammy W. bathed the child. Kollmann assaulted Tammy W. in her bedroom later that night while the child slept on the living room couch. Kollmann disregarded Tammy W.'s objections to the sexual contact. Tammy W. stated that during their marriage, Kollmann "was controlling. It was like walking on egg shells, being around him.... He would go into a drunken slumber and abusive behaviors" and then apologize and promise not to repeat the behavior, which he did anyway. After they divorced, Kollmann remained controlling, asking Tammy W. where she was and whom she was with, stalking her.
¶4 During cross-examination, defense counsel tried to point out where Tammy W.'s testimony about the assault diverged from the other instances in which she had described the assault. Counsel also questioned Tammy W. about the inconsistency between her preliminary examination testimony in which she denied having any telephone calls with Kollmann and her trial testimony in which she admitted having telephone calls with Kollmann after the assault about matters involving their son.[2] Tammy W. admitted calling Kollmann numerous times after the assault because she was concerned about their son, whom Kollmann had for the weekend after the assault, but she could not recall the details of an almost onehour conversation she had with Kollmann the day following the assault. Tammy W. testified that Kollmann told her that if there was anything suspicious at her house when he came to return the child after placement the weekend after the assault, he would leave with the child and she would not see the child again (as Kollmann had threatened in the past). On redirect, Tammy W. reiterated that she had telephone conversations with Kollmann after the assault about placement arrangements for their child. She also clarified that her ability to effectively physically resist Kollmann was impaired by weakness on the left side of her body due to a stroke.
¶5 After the State rested, defense counsel gave an opening statement in which she told the jurors that they were going to hear about Tammy W.'s manipulative and controlling nature (as contrasted with evidence of Kollmann's abusive and controlling nature, which the jury had already heard) and evidence about the nature of the relationship between Tammy W. and Kollmann. Counsel then called Debra Anderson, Kollmann's fiancée, to testify and asked her about whether she had witnessed any contact between Tammy W. and Kollmann. Anderson stated that Kollmann would tell her what he and Tammy W. discussed on the telephone and that she was not allowed to meet Tammy W. because Kollmann "was afraid of what [Tammy W.] would do." At this point, the prosecutor objected on hearsay grounds, and the court sustained the objection. Counsel's other attempts to have Anderson testify about telephone contact between Kollmann and Tammy W. were met with sustained hearsay objections. Anderson was able to testify that she observed Kollmann speaking in a normal fashion with Tammy W. Anderson denied that Kollmann is manipulative or controlling.
¶6 Kollmann's mother testified that she knew that Tammy W. made threats against Kollmann. She related an incident in which Tammy W. was angry that Kollmann was going to spend time with one of his other children, and Tammy W. threatened to make the Kollmann family's life miserable. Kollmann's mother testified that she had seen Tammy W. become violently angry but could not elaborate on the circumstances.
¶7 During her closing argument, trial counsel argued that Tammy W.'s claim that she did not consent was undermined by her lies about not having telephone contact with Kollmann in the days after the assault, her inconsistent statements as to whether she felt threatened by Kollmann, and her lies that Kollmann was manipulative and controlling. Counsel pointed out the implausibility of Tammy W.'s nonconsent claim because there was no evidence of a struggle and no attempt to make noise to rouse the sleeping child (which counsel implied might have interrupted the assault). Counsel reminded the jury about Debra Anderson's testimony that Kollmann is neither violent nor manipulative. Counsel pointed out the inconsistencies in Tammy W.'s various renditions of the details of the assault. Counsel argued that Tammy W. was able to remember certain details about the telephone calls with Kollmann when questioned by the prosecutor, but not when questioned by defense counsel. Counsel argued that it did not make sense that a sexual assault victim would have lengthy and numerous telephone conversations with her assailant after the assault. Counsel questioned Tammy W.'s intention to preserve the father-child relationship in the face of a sexual assault. The jury convicted Kollmann.
¶8 Postconviction, Kollmann argued that trial counsel did not effectively implement her strategy to show that Tammy W. was biased, vindictive and a liar. Trial counsel did not effectively address the central issue in the case the credibility contest between Kollmann and Tammy W. on the issue of consentby presenting evidence to undermine Tammy W.'s credibility. Trial counsel did not effectively argue in either her opening statement or closing argument that Tammy W.'s bias and vindictiveness led her to fabricate the sexual assault allegation. Trial counsel did not present evidence that Tammy W. and Kollmann had an ongoing consensual sexual relationship after their divorce, even though Tammy W. contended that Kollmann's controlling behavior during the marriage did not change once they were divorced.[3]
¶9 Kollmann also argued that trial counsel did not meaningfully challenge or counter Tammy W.'s description of Kollmann as abusive, controlling and a deadbeat. Trial counsel did not seek a cautionary jury instruction to guide the jury in its consideration of Tammy W.'s testimony about Kollmann's alleged abusiveness and drunkenness. Trial counsel also did not make use of audio recordings of Tammy W. threatening the Kollmann family.
¶10 The State argued that defense counsel adequately litigated the issue of consent.
¶11 At the Machner[4] hearing, defense counsel testified that Tammy W.'s sexual assault claim was "patently incredible" given the details of the assault as described by Tammy W. and that "no jury in the world was going to believe what she said," particularly if counsel could show that Tammy W. had lied at the preliminary examination about not having telephone contact with Kollmann after the assault. Counsel's belief that the jury would not believe Tammy W. drove her decision-making and strategy choices in the case. Counsel planned not to present evidence, to force the State to meet its burden and to argue that Tammy W.'s testimony was insufficient for the State to meet its burden. Counsel conceded that there were four to five witnesses who could have testified at trial that Tammy W. was biased against Kollmann and that she had lied in the past. Counsel opted to minimize the evidence presented on Kollmann's behalf in order to convey to the jury that the defense did not think the State's case was weighty or credible. Counsel was aware of the existence of a tape on which Tammy W. threatened Kollmann, but counsel never heard the tape. Counsel conceded that the case was a "he said/she said" case on the question of consent, and that credibility was the only issue. But, counsel felt that Kollmann would have made a poor witness, particularly in light of a prior disorderly conduct incident involving Tammy W. and Kollmann's personal characteristics and ability to be confused by a questioner.
¶12 Counsel explained that she did not object to Tammy W.'s testimony that Kollmann was controlling during their marriage, and that he exhibited a pattern of getting drunk and becoming abusive because counsel wanted the jury to "see Tammy [W.] in all of her hateful, spiteful, vicious glory and I figured that letting her make that comment and letting the testimony in, which could then be subject to cross-examination and even potential rebuttal witnesses." Counsel conceded that this evidence was objectionable. Other evidence came in that Kollmann was stalking Tammy W. Counsel did not object to Tammy W.'s testimony that Kollmann did not pay for the haircut and owed the barber money from past visits because counsel did not believe the jury would convict Kollmann of sexual assault just because he did not pay for a haircut.[5] However, counsel conceded that if these comments were believed by the jury, it would have been prejudicial to Kollmann. Counsel decided not to ask for a curative instruction relating to this evidence for the same reason she did not object to the evidence in the first place. Counsel, having decided not to present any evidence on Kollmann's behalf, also deferred her opening statement until the close of the State's case.
¶13 Trial counsel conceded that she did not obtain the telephone records for all four telephone numbers held by Tammy W. and Kollmann. She obtained records for one of Tammy W.'s telephone numbers, her landline, but did not obtain telephone records for her cell phone, which Kollmann contended Tammy W. used to contact him after the assault. Counsel felt that demonstrating that Tammy W. lied about the telephone contact was sufficient and she did not need to show how many calls Tammy W. made to Kollmann after the assault.
¶14 Counsel also attempted to locate by letter and telephone witnesses identified to her by Kollmann. Counsel stated that she spoke to Donna Kollmann, Kollmann's mother, and Debra Anderson, Kollmann's fiancée, and other witnesses prior to trial. But, counsel never made contact with several of the witnesses Kollmann identified for her, and she did not follow up on her letter and telephone attempts to contact them. Counsel conceded that Kollmann never asked her to stop trying to locate these witnesses, and counsel did not recommend to Kollmann that they retain an investigator to locate these witnesses, although Kollmann would have agreed with that advice. Counsel was aware of four to five other witnesses who could testify about the relationship between Tammy W. and Kollmann and Tammy W.'s past lies, but opted not to bring those witnesses to court because counsel thought it would be obvious to the jury that Tammy W. had lied about the sexual encounter.
¶15 Before trial, counsel learned that Kollmann and Tammy W. had a postdivorce sexual relationship, but counsel did not investigate the facts surrounding that relationship or present evidence of the relationship to the jury.[6] Counsel conceded that it was error not to present this information to the jury as relevant to Tammy W.'s credibility. But, counsel made that decision in the context of her belief that no jury would believe Tammy W.
¶16 Counsel believes that she argued to the jury that Tammy W. was not credible, highlighting evidence that she lied in the course of the case. Counsel also successfully sought a falsus in uno[7] instruction relating to Tammy W.'s testimony.
¶17 Kollmann testified at the Machner hearing that he gave the names of numerous witnesses to trial counsel as part of his defense. Two days before trial, trial counsel told Kollmann that the defense was going to be that Tammy W. was a jealous ex-wife and that the jurors would not believe Tammy W.'s rendition of events.[8] Trial counsel spoke with Donna Kollmann (Kollmann's mother) and Debra Anderson (Kollmann's fiancée) for fifteen minutes the night before trial to prepare them to testify. Kollmann told trial counsel about the numerous times Tammy W. called him after the sexual assault and they discussed obtaining those telephone records to substantiate Kollmann's claim.
¶18 In support of his ineffective assistance claim, Kollmann made offers of proof as to what additional witnesses would have said had they been called to testify. Cynthia Stodghill, who has a child with Kollmann, would have testified that trial counsel never interviewed her, she has known Tammy W. for six years, she knows her to be jealous and mean-spirited, and she heard Tammy W. threaten to hurt Kollmann. Kollmann's mother would have testified that trial counsel never contacted her or followed up on the tape containing Tammy W.'s threats and that trial counsel put Kollmann's mother on the stand to testify without any preparation. Kollmann's mother participated in the early meetings with counsel and would have testified that witnesses were identified to trial counsel along with their likely contributions to trial. Other Kollmann family members offered that they had information about Tammy W. designed to show that she was vindictive toward Kollmann. Kollmann also offered statements from other character witnesses.
¶19 At the close of the Machner hearing, the circuit court assessed whether trial counsel's representation fell below acceptable standards of representation and, if so, whether Kollmann was prejudiced. The court found that defense counsel had a trial strategy to demonstrate that Tammy W. was lying about the sexual assault because she was "a hate-filled, spiteful woman." The court recognized that the case turned largely on the credibility of Kollmann and Tammy W. The court found that defense counsel attempted to demonstrate the falsity of Tammy W.'s sexual assault claim during cross-examination. The court found that the defense strategy was served by not objecting to Tammy W.'s negative comments about Kollmann as a controlling, manipulative alcohol abuser. The court found that trial counsel effectively highlighted for the jury why Tammy W. would speak so negatively of Kollmann while she was making numerous telephone calls to him after the assault. The court found that counsel effectively cross-examined Tammy W. and fully tried the credibility issue.
¶20 On the question of whether trial counsel contacted witnesses identified by Kollmann, the circuit court found that trial counsel contacted some of the witnesses identified by Kollmann and that the additional testimony from witnesses identified at the postconviction hearing would not have made a difference in the outcome of the trial.
¶21 The court found that a fair amount of objectionable other acts evidence was presented to which trial counsel did not object. The circuit court found that the inadmissible other acts evidence disfavored both Kollmann and Tammy W. and did not affect the outcome of the trial.
¶22 The court did not find fault with defense counsel's decision to defer her opening statement until the State rested.
¶23 The court noted that trial counsel's failure to obtain a complete set of Tammy W.'s telephone records to show that she called Kollmann repeatedly after the alleged assault did not affect the outcome of the trial. Trial counsel presented a portion of the telephone calls and cross-examined Tammy W. about the calls in an attempt to demonstrate that the telephone calls were inconsistent with a sexual assault claim and inconsistent with Tammy W.'s testimony at the preliminary examination. The court concluded that defense counsel rendered effective assistance and denied Kollmann's motion for a new trial.
¶24 The ineffective assistance of counsel standards are:
To establish an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that he or she was prejudiced by the deficient performance. A reviewing court may dispose of a claim of ineffective assistance of counsel on either ground. Consequently, if counsel's performance was not deficient the claim fails and this court's inquiry is done.
We review the denial of an ineffective assistance claim as a mixed question of fact and law. We will not reverse the trial court's factual findings unless they are clearly erroneous. However, we review the two-pronged determination of trial counsel's effectiveness independently as a question of law.
State v. Kimbrough, 2001 WI App 138, ¶¶26-27, 246 Wis. 2d 648, 630 N.W.2d 752 (citations omitted). To establish prejudice, "the defendant must affirmatively prove that the alleged defect in counsel's performance actually had an adverse effect on the defense." State v. Reed, 2002 WI App 209, ¶17, 256 Wis. 2d 1019, 650 N.W.2d 885. The defendant "`must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).
¶25 We agree with the circuit court's finding that trial counsel had a defense strategy, but the court's finding that counsel effectively implemented that strategy is clearly erroneous based on the record. See Kimbrough, 246 Wis. 2d 648, ¶27. Adequately litigating the credibility issue required more than merely cross-examining Tammy W. and relying upon a strongly held belief that the jury would not believe Tammy W. As counsel conceded at the Machner hearing, the parties' postdivorce sexual relationship was relevant, but counsel made no attempt to investigate or seek a pretrial ruling on the admissibility of the evidence. Trial counsel did not present witnesses who had evidence to offer of Tammy W.'s behavior toward Kollmann and statements demonstrating her vindictiveness against him. While counsel argued the consent issue in her closing argument, she did not clearly articulate for the jury that Tammy W. was a vindictive, jealous exwife with a motive to fabricate the sexual assault claim.
¶26 Counsel failed to object to Tammy W.'s characterization of Kollmann as a stalker, drunk and abuser who fails to pay his debts. This was deficient performance because the evidence impacted Kollmann's credibility, and trial counsel did very little to rehabilitate Kollmann in the eyes of the jury (only Anderson testified that Kollmann is not abusive).[9] Under the circumstances of this case, we do not agree with the circuit court that the prejudicial effect of this evidence was lessened because both Kollmann and Tammy W. were the subject of such evidence. We also question why counsel chose to defer her opening statement until the State put in its entire case, leaving the jury without an organized statement of the theory of defense.[10]
¶27 The State argues that the circuit court found that trial counsel had a defense strategy and implemented that strategy via the trial decisions she made. As discussed above, we disagree. The State contends that if trial counsel had objected to Tammy W.'s testimony that Kollmann was controlling, the circuit court might have overruled the objection because the testimony arguably gave background information regarding the relationship between Kollmann and Tammy W. See State v. Shillcutt, 116 Wis. 2d 227, 236-37, 341 N.W.2d 716 (Ct. App. 1983), aff'd, 119 Wis. 2d 788, 350 N.W.2d 686 (1984). Arguing that the evidence might have been admissible does not end our analysis because trial counsel did not counter it.
¶28 We consider the cumulative effect of counsel's ineffective crossexamination, failure to investigate and present evidence, and failure to clearly articulate and argue the theory of defense. We hold that trial counsel did not effectively implement her defense strategy and therefore performed deficiently. Trial counsel's deficient pretrial preparation and poor follow through at trial undermine our confidence in the outcome of the trial. There is a reasonable probability that but for counsel's deficient performance, the result of the proceeding might have been different. Reed, 256 Wis. 2d 1019, ¶17.[11]
¶29 Because trial counsel rendered ineffective assistance, we reverse the judgment of conviction and the postconviction order and remand for a new trial.
By the Court.  Judgment and order reversed and cause remanded with directions.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Tammy W.'s preliminary examination testimony on the question of telephone calls proceeded as follows:

Defense counsel: Did you have any other telephone calls with Mr. Kollmann that day?
Tammy W.: No.
Defense counsel: Did you have any telephone calls with him subsequent regarding that incident?
Tammy W.: No.
[3] The State's respondent's brief does not address trial counsel's failure to offer evidence of the postdivorce sexual relationship.
[4] State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (trial counsel's testimony must be preserved to pursue an ineffective assistance of counsel claim).
[5] The court declined to permit trial counsel to call the barber to testify that Kollmann paid for the haircut to rebut Tammy W.'s testimony that he did not pay for the haircut. The court found that the issue was a subsidiary issue which was not particularly germane.
[6] Prior sexual contact between the accuser and the accused may be admissible under WIS. STAT. § 972.11(2)(b)1., subject to a pretrial motion regarding the admissibility of the evidence, WIS. STAT. § 971.31(11).
[7] The falsus in uno instruction is set forth in WIS JICRIMINAL 305: "If you become satisfied from the evidence that any witness has willfully testified falsely as to any material fact, you may, in your discretion, disregard all the testimony of such witness which is not supported by other credible evidence in the case."
[8] Initially, counsel intended to claim that the incident did not happen because Kollmann told her he did not have sex with Tammy W. as alleged in the complaint. After DNA evidence confirmed that Kollmann had had sex with Tammy W. on the date in question, Kollmann's defense changed to the jealous ex-wife/consent defense.
[9] We recognize that trial counsel was not able to present the testimony of the barber that Kollmann paid for the haircut. Had this been the only other prejudicial character evidence, we might feel otherwise about trial counsel's performance. But, when coupled with Tammy W.'s other testimony, we conclude that it was objectionable and needed to be countered by trial counsel.
[10] We do not mean to suggest that deferring an opening statement is per se deficient performance. However, when combined with the other missteps in this case, it is a factor we consider in evaluating whether trial counsel rendered effective assistance.
[11] Because we conclude that defense counsel was ineffective for the reasons discussed, we need not address Kollmann's claim that counsel was also ineffective for not having him testify at trial.