State of Wisconsin, Plaintiff-Respondent,
v.
Kristina L. Vogt, Defendant-Appellant.
No. 03-1853-CR.
Court of Appeals of Wisconsin.
Opinion Filed: January 19, 2005.
Before Brown, Nettesheim and Snyder, JJ.
¶1 PER CURIAM.
Kristina L. Vogt appeals from a judgment convicting her after a jury trial of attempted first-degree intentional homicide with a dangerous weapon as party to the crime contrary to WIS. STAT. §§ 940.01(1), 939.32(1)(a), 939.63(1)(a)2. and 939.05 (2001-02),[1] and from an order denying her postconviction motion. On appeal, Vogt argues that she received ineffective assistance from her trial counsel, the circuit court should have suppressed an inculpatory statement she gave to police, and the evidence was not sufficient to convict her. We reject all of these claims and affirm.
¶2 Vogt was sixteen years old when she was charged in an April 2001 shooting incident involving her former boyfriend. The State alleged that Vogt asked others to shoot her former boyfriend after he broke off their relationship. Vogt drove the vehicle used in the shooting. The shots fired at her boyfriend missed, but the boyfriend's brother was seriously wounded. A jury convicted Vogt of the charges relating to the boyfriend and acquitted her of the charges relating to the boyfriend's brother. Additional facts will be stated as we address the appellate issues.
¶3 Vogt argues that her trial counsel was ineffective in three respects: (1) counsel did not take steps to enable Vogt to receive a juvenile court disposition; (2) counsel did not seek jury instructions regarding lesser-included offenses; and (3) counsel did not cultivate an attorney-client relationship with Vogt.
¶4 The ineffective assistance of counsel standards are:
To establish an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that he or she was prejudiced by the deficient performance. A reviewing court may dispose of a claim of ineffective assistance of counsel on either ground. Consequently, if counsel's performance was not deficient the claim fails and this court's inquiry is done.
We review the denial of an ineffective assistance claim as a mixed question of fact and law. We will not reverse the trial court's factual findings unless they are clearly erroneous. However, we review the two-pronged determination of trial counsel's effectiveness independently as a question of law.
State v. Kimbrough, 2001 WI App 138, ¶¶26-27, 246 Wis. 2d 648, 630 N.W.2d 752 (citations omitted). To establish prejudice, "the defendant must affirmatively prove that the alleged defect in counsel's performance actually had an adverse effect on the defense." State v. Reed, 2002 WI App 209, ¶17, 256 Wis. 2d 1019, 650 N.W.2d 885. The defendant "`must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).
¶5 We first address Vogt's claim that trial counsel did not take steps to enable her to receive a juvenile court disposition. The attempted first-degree intentional homicide charges under WIS. STAT. §§ 940.01(1) and 939.32(1)(a) subjected the sixteen-year-old Vogt to criminal court jurisdiction pursuant to WIS. STAT. § 938.183(2). After her preliminary examination, Vogt moved the circuit court for reverse waiver to juvenile court under § 938.183(1)(am). At the time Vogt filed her § 938.183(1)(am) reverse waiver motion, the parties and the circuit court did not realize that because Vogt was sixteen she was ineligible for reverse waiver under § 938.183(2) (criminal court has exclusive original jurisdiction over juveniles fifteen years old and older charged with a § 940.01 offense). The circuit court held a hearing and denied Vogt's motion for reverse waiver.
¶6 Postconviction, Vogt claimed that her trial counsel was ineffective because he did not advise her that if she entered a plea to reduced charges,[2] she would have been entitled to a reverse waiver hearing under WIS. STAT. § 938.183(2)[3] and a possible juvenile disposition. Trial counsel conceded that he was unfamiliar with this possibility. We agree with the circuit court that trial counsel performed deficiently when he failed to advise Vogt that if she entered into a plea agreement, she might be eligible for a juvenile disposition under § 938.183(2). See State v. Fritz, 212 Wis. 2d 284, 293, 569 N.W.2d 48 (Ct. App. 1997) (defendant has right to effective assistance of counsel on question of whether to accept or reject plea bargain).
¶7 Although counsel performed deficiently, we also agree with the circuit court that Vogt was not prejudiced by counsel's deficient performance for three reasons. First, Vogt did not satisfy the circuit court at the postconviction motion hearing that she would have accepted the plea offer had she known about the possibility of a juvenile disposition. Vogt's testimony in this regard at the postconviction motion hearing was contradictory, but the court's finding that Vogt would not have accepted a plea offer is supported by the record and is not clearly erroneous. Trial counsel and Vogt's father testified postconviction that the defense was focused on avoiding prison. The State's second plea offer included the State's recommendation of prison.
¶8 Second, the improvidently granted pretrial reverse waiver hearing was the functional equivalent of the waiver hearing Vogt might have had if she entered a plea to reduced charges. The circuit court's pretrial findings were adequate to deny reverse waiver under WIS. STAT. § 938.183(2) even if Vogt had entered a plea to reduced charges and been eligible for a reverse waiver hearing.
¶9 The circuit court's analysis of reverse waiver on Vogt's motion under WIS. STAT. § 938.183(1)(am) considered the factors under WIS. STAT. § 970.032(2)[4] and eliminated the possibility of a juvenile disposition. The court noted the similarities between the factors to be considered under § 970.032(2) and WIS. STAT. § 938.18(5) (factors to be considered regarding waiver if juvenile convicted of lesser offense) and that the inquiry at the pretrial waiver hearing[5] was the same as it would have been had Vogt entered a plea to lesser felonies: whether a juvenile court disposition was appropriate.
¶10 We agree with the circuit court that the waiver factors under WIS. STAT. §§ 970.032(2) and 938.18(5) are sufficiently similar. At the pretrial waiver hearing, the circuit court considered the § 970.032(2) factors: whether Vogt could receive adequate treatment in the juvenile system, whether waiving Vogt to juvenile court would depreciate the seriousness of the offense, and whether other juveniles need to be deterred by retaining criminal court jurisdiction. See § 970.032(2)(a)-(c). The court found that Vogt would not receive adequate treatment time in a juvenile setting, Vogt could get treatment in the adult correctional system, the offenses were serious, and waiving Vogt to juvenile court would not have a deterrent effect. These considerations are echoed in § 938.18(5). The § 938.18(5) criteria for reverse waiver under WIS. STAT. § 938.183(2) are: the personality and record of the juvenile, the type and seriousness of the offense, the adequacy of juvenile facilities and treatment, and the desirability of disposing of the entire case in one court.
¶11 Third, the circuit court would not have given Vogt a juvenile disposition under any circumstances. In its sentencing remarks, the circuit court referred back to its findings at the pretrial waiver hearing, noting that the court would not permit Vogt to be handled in a juvenile setting because the amount of time Vogt would be under the juvenile court's jurisdiction would not be long enough to address the matters which led her to commit the crime. Implicit in these remarks is that as an adult court participant, Vogt would be subject to a longer period of supervision. The court reiterated that Vogt needs long-term supervision, which would not be possible under the serious juvenile offender provisions. The court reiterated postconviction that it would not have agreed to a juvenile disposition even if Vogt had entered a plea to reduced charges.
¶12 The circuit court's findings on the question of reverse waiver at the outset of the case are sufficient to block Vogt from receiving a juvenile court disposition had she been convicted of Class C felonies pursuant to a plea agreement. Because the record substantiates that Vogt would not have entered a plea to reduced charges because the State insisted on prison and the circuit court had already declined to waive Vogt to juvenile court, Vogt was not prejudiced by trial counsel's failure to inform her of her potential eligibility for a juvenile disposition if she entered a plea to lesser felonies.
¶13 Vogt next argues that trial counsel was ineffective for not seeking jury instructions on lesser-included offenses. The circuit court found that trial counsel performed deficiently because he did not realize that if Vogt were convicted of a lesser-included offense, the possibility for waiver to juvenile court would arise. But, the circuit court concluded that Vogt was not prejudiced by this failing of counsel because the circuit court would not have waived Vogt to juvenile court in any event. We affirm the circuit court's decision not to grant Vogt relief vis-á-vis lesser-included offenses but for a different reason.
¶14 At the postconviction motion hearing, trial counsel testified that he did not seek jury instructions on lesser-included offenses because he was pursuing an all-or-nothing strategy. Counsel felt that if the jury had the option to consider lesser offenses, the jury might have convicted on a lesser offense as a compromise, yielding prison for Vogt. Vogt and her family had made clear to counsel throughout the representation that they would not agree to anything which would result in prison. Counsel's decision not to request instructions on lesser-included offenses dovetailed with that strategy. Merely because counsel's strategy was unsuccessful does not mean that his or her performance was legally insufficient. See State v. Teynor, 141 Wis. 2d 187, 212, 414 N.W.2d 76 (Ct. App. 1987). Trial counsel may select a particular strategy from the available alternatives, and need not undermine the chosen strategy by presenting inconsistent alternatives. State v. Hubanks, 173 Wis. 2d 1, 28, 496 N.W.2d 96 (Ct. App. 1992), cert. denied, 510 U.S. 830 (1993). We agree with the circuit court that counsel's strategy did not prejudice Vogt because, as she frames the appellate issue, she wanted an option for juvenile waiver. As we have already held, that was not an option for Vogt in this case. Counsel did not perform deficiently.
¶15 Vogt cites the jury's inquiry about a possible lesser charge as an indication of prejudice. This is mere speculation. The record does not demonstrate about which charge the jury inquired, the charge of which Vogt was convicted (involving the ex-boyfriend) or the charge of which Vogt was acquitted (involving the boyfriend's brother).
¶16 Vogt argues that her trial counsel was ineffective because he did not cultivate an attorney-client relationship with her and did not sufficiently consult with her outside the presence of her parents. After the postconviction motion hearing, the circuit court deemed not credible Vogt's complaints about the relationship with her counsel. The court found that trial counsel and Vogt met privately, and that trial counsel directly conveyed plea offers to Vogt from the State. The court found that Vogt and her parents placed trial counsel "in an extremely difficult position" because they did not tell counsel that they had hired a private investigator or had been coaching Vogt.[6] Counsel was excluded from aspects of the case by Vogt and her parents. These findings are not clearly erroneous. Counsel did not perform deficiently.
¶17 Vogt next argues that the statement she gave to Detective Houk on April 16, 2001, should have been suppressed as involuntary. Vogt contends that she was tricked into appearing at the police station by a detective who told her she could pick up her vehicle (which had been used in the shooting). When Vogt arrived at the police station, she was separated from her mother, who had accompanied her, and interrogated after she received Miranda warnings.[7] Vogt made inculpatory remarks. When Vogt asked for an attorney, the interrogation ceased.
¶18 In ruling on Vogt's motion to suppress the statement, the circuit court concluded that asking Vogt to come to the station to retrieve her vehicle was not a violation of Vogt's constitutional rights and that separating her from her mother did not have any impact on her ability to give a voluntary statement. The court found that Vogt was advised of and understood her constitutional rights and agreed to give a statement. The court found no improper conduct by the police in the course of the interrogation.
¶19 On appeal, Vogt argues that her statement should have been suppressed as involuntary. However, Vogt cites no evidence that the police engaged in coercion or improper conduct which exceeded her ability to resist. See State v. Hoppe, 2003 WI 43, ¶¶36-37, 261 Wis. 2d 294, 661 N.W.2d 407. Such conduct "is a necessary prerequisite for a finding of involuntariness." Id., ¶37 (citations omitted). We affirm the circuit court's refusal to suppress the April 16 statement.
¶20 Finally, Vogt argues that the evidence was not sufficient to convict her of attempted first-degree intentional homicide with a dangerous weapon as party to the crime. As support for her argument, Vogt cites her own testimony that she never wanted to hurt her former boyfriend or his family members and that she went to his house on the night of the shooting to make him jealous. Vogt also cites the testimony of Ritchie Casarez that he and Vogt never agreed to kill the former boyfriend and he never overheard any agreement between Vogt and Michael White to kill the former boyfriend. Casarez and White were Vogt's coactors. Vogt characterizes her statement about her ex-boyfriend as "trash talk."
¶21 The evidence upon which Vogt relies was not the only evidence before the jury. We review the evidence to determine whether the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. State v. Ray, 166 Wis. 2d 855, 861, 481 N.W.2d 288 (Ct. App. 1992).
¶22 As the State points out in its thorough review of the evidence, the jury heard that Vogt asked Casarez and White to kill her former boyfriend. A few weeks later, Vogt picked up Casarez and White, drove to White's house to retrieve a shotgun and then drove to the former boyfriend's house, all the while talking about the plan to kill the former boyfriend. Vogt and the others encountered the former boyfriend and White shot the boyfriend's brother. Vogt and the others fled the scene but not before shooting at the former boyfriend from Vogt's vehicle. The evidence before the jury supports Vogt's conviction for attempted first-degree intentional homicide with a dangerous weapon as party to the crime.
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The State's second plea offer offered to reduce the charges to solicitation to commit first-degree intentional homicide and first-degree reckless injury, Class C felonies. These charges would have made a juvenile disposition possible under WIS. STAT. § 938.183(2).
[3] Under WIS. STAT. § 938.183(2), a juvenile disposition is possible if the juvenile is found to have committed a lesser offense and the court determines that it would be in the juvenile's best interest to impose a juvenile disposition under WIS. STAT. § 938.34.
[4] Under WIS. STAT. § 970.032(2), where a court determines that there is probable cause to believe that a juvenile subject to criminal court jurisdiction under WIS. STAT. § 938.183(2) committed the alleged offense:

the court shall determine whether to retain jurisdiction or to transfer jurisdiction to the court assigned to exercise jurisdiction under chs. 48 and 938. The court shall retain jurisdiction unless the juvenile proves by a preponderance of the evidence all of the following:
(a) That, if convicted, the juvenile could not receive adequate treatment in the criminal justice system.
(b) That transferring jurisdiction to the court assigned to exercise jurisdiction under chs. 48 and 938 would not depreciate the seriousness of the offense.
(c) That retaining jurisdiction is not necessary to deter the juvenile or other juveniles from committing the violation of which the juvenile is accused under the circumstances specified in s. 938.183(1)(a), (am), (ar), (b) or (c), whichever is applicable.
[5] Again, Vogt was not eligible for reverse waiver because she did not meet the age requirements at the time she committed the offenses.
[6] Vogt testified postconviction that she withheld information from trial counsel at the request of her parents.
[7] Miranda v. Arizona, 384 U.S. 436 (1966).