COURT OF APPEALS
DECISION
DATED AND FILED

February 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP54-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF26

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ADRIAN GUZMAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Adrian Guzman appeals a judgment of conviction, entered following a jury trial, for incest and for repeatedly sexually assaulting his niece, Yvonne.[1]   He also appeals an order denying postconviction relief.   On appeal, Guzman argues he was denied the effective assistance of counsel at trial when trial counsel elicited testimony from a detective that vouched for Yvonne's credibility and failed to object to testimony that a defense witness, Cynthia, was a drug user.   We affirm.

## BACKGROUND

¶2     The State charged Guzman with incest and repeated sexual assault of a child.   Thirteen witnesses testified at trial.   As relevant to this appeal, Yvonne testified that during the relevant time period she lived with Guzman, her sister Cynthia, another uncle, and her grandmother.   When she was about twelve years old, Guzman began sexually assaulting her on a regular basis.   He would fondle her chest and vagina when tucking her in for bed.   Yvonne explained there were later instances in which Guzman performed oral sex on her.   Yvonne further testified that Guzman would place his penis on her back while he masturbated, and that there were times when she would wake up with different clothes on than what she had gone to sleep in.   Most of the sexual assaults occurred in her bedroom. Her sister, Cynthia, often slept in the same room as her in the upper bed of the bunk they shared.   Guzman would occasionally sexually assault Yvonne in her

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym when referring to the victim in this case.  We also use a pseudonym when referring to the victim's sister ("Cynthia").

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

bedroom while Cynthia was in the upper bunk. However, Yvonne explained the assaults often occurred while Cynthia was sleeping in Guzman's bedroom.

¶3     Yvonne testified that Guzman was very controlling and that he would not allow her to date and spend time with friends. Yvonne explained Guzman regularly tracked her location based on her cell phone, frequently texted her, and, if she did not respond promptly enough, he would enable the "find my iPhone" feature on her cell phone, which would cause her phone to ring until she contacted him. Yvonne testified that when she later did have a boyfriend, she needed Guzman's permission to spend time with him. She stated that Guzman "would always be there if I wanted to do something with [my boyfriend]." Eventually, when Yvonne was eighteen years old, she disclosed the assaults to her boyfriend's mother. The assaults were reported to police.

¶4     Detective Eric Traxler investigated Yvonne's accusation against Guzman. Traxler testified regarding his investigation, including his interviews with Yvonne, Cynthia, and Guzman. During cross-examination, defense counsel highlighted numerous aspects of the investigation, including the fact that Guzman denied the allegations, that Cynthia and her grandmother both denied having seen any assaults, that the only person who alleged there was a sexual assault was Yvonne, that there was no physical evidence, and that police did not seek Yvonne's medical records until after Guzman was charged. Counsel then asked, "just so that I'm clear and just so that everybody else is clear, [Yvonne's] accusation and [Yvonne's] accusation alone is the reason that Mr. Guzman was arrested and referred to the district attorney's office for prosecution?" Traxler replied by saying that Yvonne's "story seemed credible and reliable in my opinion in my … over 21 years as a police officer."

¶5 Defense counsel then asked Traxler whether he was aware that "she was unhappy with her uncle at that time." Traxler responded, "Yes, sir. She had mentioned that." Defense counsel also asked about the "significant disputes in the family home regarding who she could date and under what circumstances she could date." Traxler agreed that Yvonne was "upset" about the rules Guzman imposed on her and agreed that children occasionally fabricate stories against adults in their lives under such circumstances.

¶6 Trial counsel then stated, "I'm just trying to understand what it is about this particular statement that was so convincing and so strong to you that you wouldn't do any additional investigation other than talk to [Yvonne]?" Traxler responded that no "red flags came up during my interview with [Yvonne]" and "[t]here was nothing to indicate that her story was not true." After a few more follow-up questions, defense counsel ended his questioning of Traxler.

¶7 Then, during the defense's case, the defense called Cynthia to testify. At the beginning of her testimony, Cynthia explained she had enlisted in the Marines and as part of the Marines' core values, she was required to tell the truth. Cynthia testified that she never witnessed Guzman assault Yvonne, that she would have heard the assaults if they occurred in their shared bedroom, that Guzman never gave her or Yvonne drugs, that Yvonne got in arguments with Guzman about his rules for her, and that Yvonne had a reputation in the family for being untruthful. On cross-examination, Cynthia conceded that she was biased in Guzman's favor and admitted that Guzman would buy Yvonne and Cynthia alcohol when Yvonne asked for it. She denied telling anyone that Guzman would give her pills to study and focus.

¶8 During its rebuttal case, the State called Yvonne and Cynthia's aunt, Crystal Gabor. Gabor testified that Cynthia told her during an argument that Guzman gave her pills other than sleeping pills. Gabor further testified that Cynthia had been living with her at the time of the argument and that she kicked Cynthia out of her house because Gabor "found marijuana and coke bags in my house."

¶9 Guzman's trial counsel did not object to testimony about Cynthia's drug use and instead inquired on cross-examination how Gabor knew that Cynthia was a drug user. Gabor responded that she had seen "pictures on [Cynthia's] phone saying that she is high as hell with her eyes being red." Trial counsel asked if Gabor had copies of these messages, and she replied that she did. On redirect, the State admitted copies of the messages as an exhibit to establish that Cynthia had used cocaine and marijuana. One of the messages also included Cynthia's use of a racial slur. In sur-rebuttal testimony, Cynthia admitted that as an enlistee in the Marines, she had violated the oath she swore by using drugs.

¶10 Following deliberations, the jury found Guzman guilty of both counts. At sentencing, the court sentenced Guzman to fifteen years' initial confinement and fifteen years' extended supervision on the repeated-sexual-assault-of-the-same-child count. On the incest count, the court withheld sentence and placed Guzman on fifteen years' probation.

¶11 Guzman filed a postconviction motion, alleging trial counsel was ineffective in two respects: (1) for asking Traxler why he found Yvonne's story convincing enough to refer Guzman for prosecution; and (2) for failing to object when the State asked Gabor why she kicked Cynthia out of her house, leading to the discussions about Cynthia's drug use.

¶12    At the postconviction hearing, trial counsel explained that his overall theory of the case was that

> the sexual assaults that [Yvonne] was claiming did not happen and that she was -- honestly, the theory of defense was that he was a bit controlling, that he probably was stricter with her than he should have been, and that this was her way of rebelling against his control. And that's the motivation that she would have to make these allegations.

When asked about Traxler's cross-examination, trial counsel explained,

> I was trying to demonstrate that not all witnesses tell the truth, and the fact that the officers have … discretion on whether to bring charges or not bring charges, and I was trying to show that this was not a particularly credible accusation.

With respect to the State asking Gabor why she kicked Cynthia out of the house, trial counsel said that he thought he had objected to the question but realized based on the transcript that he had not. He therefore had no explanation for why he did not object.

¶13    Following arguments, the circuit court denied the motion for postconviction relief. Regarding Traxler's cross-examination, the court reasoned that even if the question was not particularly "textbook," it did not think that the question was a "mistake" or that it would have had any effect on the jury, which likely understood that the fact that Guzman was referred for charges meant that Traxler believed Yvonne. As for the question about Cynthia's drug use, the court believed that it was unlikely jurors would have had significant concerns about her marijuana use. The court therefore concluded that it did "not have any concern about the representation in this case." Guzman appeals.

**DISCUSSION**

¶14     "Whether counsel[] [was] ineffective [presents] a mixed question of fact and law." *State v. Reed*, 2002 WI App 209, ¶16, 256 Wis. 2d 1019, 650 N.W.2d 885.  Appellate courts will uphold the circuit court's findings of fact, including "the circumstances of the case and the counsel's conduct and strategy," unless they are clearly erroneous.  *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).    However, the reviewing court independently determines whether those historical facts demonstrate that defense counsel's performance met the constitutional standard for ineffective assistance of counsel, benefiting from the analyses of the circuit court.  *State v. Jenkins*, 2014 WI 59, ¶38, 355 Wis. 2d 180, 848 N.W.2d 786.

¶15     To establish a claim of ineffective assistance, a defendant must prove both:  (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89.  We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them.  *State v. Swinson*, 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12.

¶16     "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *State v. Dalton*, 2018 WI 85, ¶34, 383 Wis. 2d 147, 914 N.W.2d 120.  "In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions."  *Id.*, ¶35.  We must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." **Strickland**, 466 U.S. at 689. "Counsel's performance need not be perfect, or even very good, to be constitutionally adequate." **Dalton**, 383 Wis. 2d 147, ¶35.

¶17 We first conclude that trial counsel was not deficient by eliciting the disputed testimony from Traxler. At the postconviction hearing, counsel testified he had a strategic plan with respect to his questioning of Traxler. Counsel recognized that the State's case depended primarily on Yvonne's accusation. In Traxler's cross-examination, counsel explained that his strategy was to try and show that "not all witnesses tell the truth, and the fact that the officers have … discretion on whether to bring charges or not bring charges, and I was trying to show that this [Yvonne's accusation] was not a particularly credible accusation." Through his questioning of Traxler, counsel was able to establish that there was little evidence corroborating Yvonne's accusations and there was a personal dispute between Yvonne and Guzman. Counsel's strategic decision was objectively reasonable considering all the circumstances. *See id.*, ¶34.

¶18 As for the testimony surrounding Cynthia's drug use, we resolve that on the prejudice prong of the ineffective-assistance-of-counsel test. "To prove prejudice, a defendant must establish that 'particular errors of counsel were unreasonable' and 'that they actually had an adverse effect on the defense.'" **Sholar**, 381 Wis. 2d 560, ¶33 (citation omitted). We evaluate whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Strickland**, 466 U.S. at 694.

¶19 We conclude that Guzman was not prejudiced by trial counsel's failure to object to the testimony about Cynthia's drug use. If the jury had not heard about Cynthia's drug use there is no reasonable probability that the jury would have acquitted Guzman. The primary credibility determinations in this case involved Yvonne and Guzman. Yvonne described Guzman's repeated sexual assaults over the course of many years. She described Guzman's attempts to control her personal life. Yvonne described Guzman giving her and Cynthia sleeping pills. She explained that the assaults would happen while Cynthia was either asleep or in another room. She described the lock Guzman put on her bedroom door and used to lock the room while he was assaulting her. She explained the circumstances of her disclosure to her boyfriend's mother and, ultimately, to police. The jury had ample opportunity to weigh Yvonne's credibility regarding her accusations and conclude that she was telling the truth. Against that testimony, the jury had the opportunity to weigh Guzman's testimony. There is no reasonable probability that the fact that Cynthia used drugs pushed the jury from disbelieving Yvonne to believing Yvonne. Guzman has failed to establish prejudice stemming from any deficient performance by trial counsel.

¶20 Finally, Guzman argues the cumulative effect of counsel's errors amounts to prejudice. We, however, have already determined that counsel did not perform deficiently in his questioning of Traxler and that Guzman was not prejudiced by the testimony concerning Cynthia's drug use. Accordingly, there is no prejudice to accumulate. "Zero plus zero equals zero." *State v. Brown*, 85 Wis. 2d 341, 353, 270 N.W.2d 87 (Ct. App. 1978) (citation omitted).

*By the Court.*—Judgment and order affirmed.

9

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.