STATE of Wisconsin, Plaintiff-Respondent,

v.

John R. MALONEY, Defendant-Appellant.†

Court of Appeals

*No. 03–2180. Submitted on briefs June 2, 2004.—Decided June 29, 2004.*

2004 WI App 141

(Also reported in 685 N.W.2d 620.)

† Petition to review granted 10-19-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Lew A. Wasserman*, of *Kies & Wasserman* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. John Maloney appeals an order denying his motion for postconviction relief. The trial court rejected Maloney's allegations that trial counsel provided ineffective assistance. Maloney contends that the trial court erred in its determinations; we disagree and affirm the order.

## Background

¶ 2. In February 1998, Sandy Maloney's corpse was discovered in her fire-damaged home. Investigators concluded that her death was a homicide and her estranged husband, Maloney, became a suspect. In May, after Maloney's then girlfriend, Tracy Hellenbrand, encouraged him to hire an attorney, Maloney retained attorney Gerald Boyle,[1] who immediately notified the State of his engagement.

---

[1] Attorney Bridget Boyle-Saxton also participated in Maloney's defense, although it is not necessary for us to discuss the attorneys' activities separately.

¶ 3. During the course of the investigation, Hellenbrand apparently approached investigators and offered to wear a concealed recording device in an attempt to prove Maloney's innocence. Conversations the two shared in Las Vegas were videotaped, under supervision of Wisconsin authorities, with Hellenbrand's consent and cooperation. The conversations, however, contained inculpatory statements from Maloney.

¶ 4. In July 1998, Maloney was charged with Sandy's murder, arson, and mutilating a corpse. One of Maloney's pretrial motions sought suppression of the videotaped conversations. He complained the statements had been involuntary, that the government had engaged in outrageous conduct in obtaining the statements, and that his right to counsel had been violated. The trial court denied the motion. The jury ultimately convicted Maloney on the three counts listed above. Maloney appealed, represented by the same counsel he had at trial, and we affirmed his conviction. *See State v. Maloney*, No. 99–3069–CR, unpublished slip op. (Wis. Ct. App. Sept. 6, 2000).

¶ 5. Maloney obtained new counsel and filed a motion for relief under Wis. Stat. § 974.06[2] alleging ineffective assistance of trial counsel. He claimed that trial counsel was ineffective because: (1) counsel should have challenged the admissibility of the videotape evidence based on an alleged violation of SCR 20:4.2 by special prosecutor Joseph Paulus; (2) counsel should have challenged the admissibility of the videotape evidence under Wis. Stat. § 968.31(2)(c) as "injurious;" and (3) at trial, counsel impermissibly invited the State's investigator, Kim Skorlinski, to comment on Maloney's credibility.

---

[2] All references to the Wisconsin Statutes and the Supreme Court Rules are to the 1997–98 version unless otherwise noted.

¶ 6. The trial court denied the motion for relief. It decided: (1) Paulus had not violated SCR 20:4.2 and even if he had, suppression was not available as a remedy; (2) that because Hellenbrand had consented to the videotaping of the conversations to which she was a party, the tapes were legally obtained under WIS. STAT. §§ 968.31(2)(b) or (c); and (3) that counsel's cross-examination of Skorlinski constituted reasonable trial strategy. Maloney appeals.

### Discussion

¶ 7. Maloney's appeal involves the question of whether trial counsel was ineffective. To support a claim of ineffective assistance of counsel, Maloney must show both that counsel's performance was deficient and that this deficiency was prejudicial. *See State v. Reed*, 2002 WI App 209, ¶ 14, 256 Wis. 2d 1019, 650 N.W.2d 885. We need not address both components if the defendant fails to make a sufficient showing on one of them. *Id.*

¶ 8. Whether counsel was ineffective presents a mixed question of fact and law. *Id.*, ¶ 16. The trial court's determination of what counsel did or did not do, along with counsel's basis for the challenged conduct, are factual matters we will not disturb unless clearly erroneous. *Id.* The ultimate conclusion whether counsel's conduct constitutes ineffective assistance is a question of law. *Id.*

### Supreme Court Rule 20:4.2

¶ 9. Supreme Court Rule 20:4.2 is an ethical rule governing the behavior of members of the Wisconsin Bar. It states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a *party* the lawyer knows to be represented by another lawyer in the *matter,* unless the lawyer has the consent of the other lawyer or is authorized by law to do so. (Emphasis added.)

¶ 10. Maloney argues Paulus violated this rule when he directed Hellenbrand's participation in obtaining the Las Vegas tapes. He asserts that had trial counsel alleged this violation in the suppression motion, the tapes would have in fact been suppressed. Thus, Maloney contends counsel was ineffective by failing to make this argument. The State responds that Paulus was not in charge of the recordings but was merely kept informed of the investigation's progress and that, in any event, "Maloney was not yet a 'party' to any pending 'matter' " since he had not been charged.

██

¶ 11. The trial court held that there had been no violation of SCR 20:4.2 and that even if there had been, suppression would not be the remedy. We agree with the trial court that suppression is not available for an ethics violation. We therefore need not decide whether Paulus violated SCR 20:4.2. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

██

¶ 12. "Suppression of evidence is 'only required when evidence has been obtained in violation of a defendant's constitutional rights, or if a statute specifically provides for the suppression remedy.' " *State v. Keith,* 2003 WI App 47, ¶ 8, 260 Wis. 2d 592, 659 N.W.2d 403 (citation omitted). Indeed, the preamble to SCR ch. 20 of our Rules of Professional Conduct states in part:

Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. . . .

Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules . . . are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis . . . for sanctioning a lawyer . . . does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such duty.

The rule provides neither a constitutional nor a statutory basis for Maloney to seek suppression of the tapes as a "procedural weapon." Because suppression is not available for an ethical violation,[3] counsel is not inef-

---

[3] This is sometimes referred to as the Michigan rule, based on *Michigan v. Green,* 274 N.W.2d 448, 454 (Mich. 1979):

> The provisions of the code are not constitutional or statutory rights guaranteed to individual persons. They are instead self-imposed internal regulations prescribing the standards of conduct for members of the bar . . . . [T]he remedy for a violation has traditionally been internal bar disciplinary action against the offending attorney. . . .
>
> The admissibility of evidence . . . on the other hand, is normally determined by reference to relevant constitutional and statutory provisions, applicable court rules and pertinent common-law doctrines. Codes of professional conduct play no part in such decisions.

*See also, e.g., Suarez v. Florida,* 481 So.2d 1201, 1207 (Fla. 1985); *Iowa v. Johnson,* 318 N.W.2d 417, 437 (Iowa 1982); *Kansas v. Morgan,* 646 P.2d 1064, 1070 (Kan. 1982); *Maine v. McCarthy,* 819 A.2d 335, 341 (Me. 2003); *New Hampshire v. Decker,* 641 A.2d 226, 230 (N.H. 1994); *In Re Howes,* 940 P.2d 159, 167 (N.M. 1997).

fective for failing to raise the argument. *See Reed*, 256 Wis. 2d 1019, ¶ 17.[4]

## Wisconsin Electronic Surveillance Control Law (WESCL)

¶ 13. Maloney argues that trial counsel was ineffective for failing to challenge the videotape's admissibility under the WESCL. His claim concerns two sections of WESCL, WIS. STAT. §§ 968.31(2)(b) and (c). Under these provisions, it is not unlawful:

> (b) For a person acting under color of law to intercept a wire, electronic or oral communication, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception.

> (c) For a person not acting under color of law to intercept a wire, electronic or oral communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception unless the communication is intercepted for the purpose of com-

---

[4] The State had also argued that the rule was inapplicable because Maloney had not been charged—that is, he was not a "party to the proceedings." Maloney points us to *United States v. Hammad*, 858 F.2d 834, 838 (2nd Cir. 1988), which found "no principled basis in the [no-contact] rule to constrain its reach as the government proposes," and he implies that *Hammad* mandates suppression for an ethical violation. In the first place, we note that *Hammad* is a federal case applying federal law. As such, the federal exclusionary rule in that case is inapplicable given the controlling Wisconsin precedent we must apply. Moreover, the *Hammad* court committed the extreme remedy of suppression to a district court's discretion; it did not establish a bright-line rule. *Id.* at 840.

mitting any criminal or tortious act in violation of the constitution or laws of the United States or of any state or for the purpose of committing any other injurious act.

¶ 14. In pretrial motions, Maloney's counsel initially argued Hellenbrand had been acting under color of law—a necessary element to the alleged *Miranda*[5] violation that Maloney also raised. Moreover, at the postconviction *Machner*[6] hearing, counsel testified that it would have been pointless to raise a challenge under WIS. STAT. § 968.31(2)(b) because Hellenbrand was a party to the communication and had consented to the videotaping.

¶ 15. In rejecting Maloney's *Miranda* argument, the trial court ruled Hellenbrand had not been acting under color of law. Maloney therefore complains that counsel should have argued in the alternative that if the court found Hellenbrand was *not* acting under color of law, the tapes were obtained contrary to WIS. STAT. § 968.31(2)(c). In rejecting postconviction relief, the trial court concluded that § 968.31(2)(c) had not been violated because Hellenbrand consented to the taping.[7] Consent is irrelevant, however, if the communication is intercepted to commit an "injurious act." "Clearly," Maloney argues, "Hellenbrand was not taping [him] out of a legitimate desire to protect herself . . . Hellenbrand's purpose was to injure [him] . . . ." We disagree.

---

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[7] The State, for its part, responds that the *investigators* were the ones who intercepted the communication, under color of law, with Hellenbrand's consent, making the tapes lawful under WIS. STAT. § 968.31(2)(b).

██

¶ 16. Generally, intent presents a question of fact that we are not allowed to resolve. *See, e.g., State v. Lossman,* 118 Wis. 2d 526, 543, 348 N.W.2d 159 (1984). However, the only basis Maloney offers for Hellenbrand's motive is speculation.[8] Additionally, we know of no law, and Maloney cites none, that suggests an individual, who volunteers to aid the authorities in a lawful albeit surreptitious investigation, commits an injury against the investigated party simply by participation. Indeed, such a rule would severely hamper investigatory options available to officials.

██

¶ 17. While Maloney makes much of Hellenbrand's apparent use immunity, this would simply go to the credibility of any evidence she offered, not its admissibility. Because Maloney offers no real evidence to support his claim that Hellenbrand attempted to injure him,[9] we reject that contention as a matter of law. Because there is no evidence that Hellenbrand intercepted communications with the intent to commit an injurious act, and because Hellenbrand consented to the taping, whether we rely on WIS. STAT. § 968.31(2)(b) or (c), the tapes were lawfully obtained. As a result, counsel was not ineffective by failing to challenge them.[10]

---

[8] Additionally, if Hellenbrand did in fact offer to record conversations to prove Maloney's innocence, the evidence would suggest she was trying to exonerate—not injure—Maloney.

[9] Maloney does not allege a "criminal or tortious act in violation of the constitution or laws of the United States or of any state." *See* WIS. STAT. § 968.31(2)(c).

[10] As an aside, we note that WESCL mirrors federal law. *See* 18 USC §§ 2510 *et seq.* In 1986, Congress removed the "injurious act" language from the United States Code. *See* Electronic Communications Privacy Act of 1986, Pub. L. No. 99–508, 100

## Inappropriate Cross-Examination of Skorlinski

¶ 18. Maloney complains trial counsel invited a *Haseltine* violation against him by asking on cross-examination whether Skorlinski believed anything Maloney had told him in the investigation. *See State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). We disagree.

■■■■

¶ 19. Essentially, no witness may testify that another competent witness is telling the truth. *Id.* at 96. Whether a witness has improperly testified as to the credibility of another witness is a question of law that we review independently. *State v. Huntington*, 216 Wis. 2d 671, 697, 575 N.W.2d 268 (1998). However, this is a review of counsel's performance, so we must defer to the trial court's factual findings regarding counsel's actions. *Reed*, 256 Wis. 2d 1019, ¶ 16.

¶ 20. The line of questioning to which Maloney objects includes this exchange:

> [ATTORNEY BOYLE]: Now, we know there was no candle, so you know his [Maloney's] statement as relates to the candle is not true, correct?
>
> [SKORLINSKI]: Correct.
>
> . . . .
>
> [ATTORNEY BOYLE]: So he was there lying there about being there between 3 and 6 a.m.?
>
> [SKORLINSKI]: I do not believe he was there.

---

Stat. 1850. Therefore, Maloney's reliance on federal law is misplaced, since federal law no longer acknowledges the concept of "injurious act" vis-à–vis recorded surveillance.

. . . .

[ATTORNEY BOYLE]: ... How about fell and hit her head? Is that true?

[SKORLINSKI]: No, I don't believe that was true.

[ATTORNEY BOYLE]: Okay. Parked two blocks away. Got any evidence of that?

[SKORLINSKI]: I believe that was true.

. . . .

[ATTORNEY BOYLE]: Okay. And he says—when he says, "I wasn't there when the fire started," you believe that's a lie?

[SKORLINSKI]: Yes.

¶ 21. At the *Machner* hearing, Boyle explained that his strategy was to criticize Skorlinski's investigative techniques on this particular case—to suggest that Skorlinski seized upon Maloney so quickly and was concentrating on him as the perpetrator so intently that he failed to consider other possible suspects in the case. He felt his line of questioning, in which Skorlinski clearly demonstrates he believed Maloney was a liar, would reveal this fixation. At the same time, Boyle explained, he did not wish to alienate the jury with personal attacks directly on Skorlinski.

¶ 22. The trial court ruled:

Attorney Boyle was attempting to portray the investigative team as overly zealous and closed minded.... [T]hey focused on his client as the prime suspect and did not adequately consider other suspects. It is a common and widely accepted defense tactic to criticize the investigation, while not risking alienation of the jury by making the attack personal.

... [Maloney's] theory of defense was that someone else committed the murder, and that law enforcement unreasonably focused on the defendant as the sole suspect. Part and parcel of that defense would be an attempt to establish that the lead investigator [Skorlinski] was closed-minded by showing that he unreasonably refused to believe the defendant's version of events in spite of evidence supporting that version.

The court noted that the "supposed deficiencies" were taken out of context from a lengthy cross-examination within a lengthy trial. Additionally, it concluded Boyle was well within "the wide range of professionally competent assistance" required of attorneys. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984).

¶ 23. We cannot improve on the trial court's ruling. It is significant that the trial court had the opportunity to both see and hear counsel's presentation and evaluate its purpose in conjunction with counsel's testimony. *See State v. Curtis*, 218 Wis. 2d 550, 554, 582 N.W.2d 409 (Ct. App. 1998). Ultimately, the court determined counsel had a reasonable trial strategy—which is virtually unassailable in an ineffective assistance of counsel analysis. *See State v. Nielsen*, 2001 WI App 192, ¶ 44, 247 Wis. 2d 466, 634 N.W.2d 325. We see no reason why the *Haseltine* rule cannot be strategically waived by the party that would normally seek its protections. Trial counsel is not ineffective simply because an otherwise reasonable trial strategy was unsuccessful.

¶ 24. Maloney has failed to show that counsel's performance was deficient. The trial court therefore properly denied his motion for postconviction relief.

*By the Court.*—Order affirmed.