COURT OF APPEALS
DECISION
DATED AND FILED

September 10, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2270-CR**

Cir. Ct. No. **2016CF1956**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOHN M. SWAPSY, JR.,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: NICHOLAS McNAMARA, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  John Swapsy was convicted in the Dane County Circuit Court, following a jury trial, of one count of arson of a building, contrary

to WIS. STAT. § 943.02(1)(a) (2013-14).[1] In a postconviction motion, Swapsy argued that he is entitled to a new trial because his trial counsel was constitutionally ineffective. Specifically, Swapsy argued that his trial counsel was deficient in counsel's cross-examination of two of the State's witnesses and in his closing argument, and that counsel's deficient performance was prejudicial. Following a *Machner*[2] hearing, the circuit court denied Swapsy's motion. Swapsy makes the same arguments on appeal, and we affirm.

## BACKGROUND

¶2      In September 2016, Swapsy was charged with arson to a building in connection with a fire that occurred in the early hours of August 27, 2016, at the house of Kenneth Jones. The case was tried to a jury. Witness testimony, including the testimony of Jones, Brandon Kalish, who was living at Jones's house at the time of the fire, and Mark and Keenan Howard, who lived next door to Jones, was presented by the State to prove that Swapsy started the fire.

¶3      The testimony of these witnesses established the following facts. Around midnight on August 26-27, 2016, Swapsy had a verbal altercation with Jones at Jones's house. During that altercation, Swapsy yelled that he was going to burn Jones's house down. Swapsy then left Jones's house on a bicycle. In the early hours of August 27, Jones's house started on fire. Around the time that the fire started, Jones saw Swapsy ride a bicycle past Jones's living room window.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶4      During its opening statement, the State asserted that it intended to present the testimony of Charmaine Smith, who would give evidence that "[Swapsy] was angry and jealous because [Smith] … was living at the time … with … Jones" and that "Smith heard [Swapsy] as the fire was being lit." However, although Smith was subpoenaed and a bench warrant was issued by the circuit court, Smith failed to appear at trial.

¶5      A jury found Swapsy guilty of the charge of arson to a building. Swapsy filed a postconviction motion for a new trial on the basis that he received constitutionally ineffective assistance of counsel. Swapsy alleged that his trial counsel was deficient in counsel's cross-examinations of Jones and Kalish, and in counsel's closing argument. The circuit court held a *Machner* hearing at which Swapsy's trial counsel testified. Following the hearing, the court denied Swapsy's motion.

¶6      Swapsy appeals. We will mention other material facts in the following discussion.

## DISCUSSION

¶7      Swapsy contends that the circuit court erred in concluding that the assistance he received from his trial counsel was not constitutionally ineffective. We begin by discussing legal principles that govern ineffective assistance of counsel allegations and setting forth our standard of review.

### I.  Legal Principles Governing Ineffective Assistance of Counsel and Standard of Review.

¶8      A defendant, such as Swapsy, alleging ineffective assistance of trial counsel has the burden of proving both that counsel's performance was deficient

3

and that he suffered prejudice as a result of that deficient performance. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).

¶9 To prove that counsel's performance was deficient, the defendant must point to specific acts or omissions by counsel that "[fall] below an objective standard of reasonableness" considering all the circumstances. *See **id.*** at 688, 690. When evaluating counsel's performance, this court's review is "highly deferential" and we do "not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." ***State v. Breitzman***, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (alteration in the original) (quoting ***State v. Domke***, 2011 WI 95, ¶¶36, 49, 337 Wis. 2d 268, 805 N.W.2d 364). "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." ***State v. Thiel***, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (quoted source omitted).

¶10 To show prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland***, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.***

¶11 We need not address both aspects of the ***Strickland*** test if the defendant does not make a sufficient showing on either one. *See **id.*** at 697.

¶12 On appeal, our standard of review is two-fold. This court accepts the circuit court's findings of fact unless clearly erroneous; however, we review the circuit court's application of constitutional principles to those facts de novo. ***State v. Harvey***, 139 Wis. 2d 353, 376, 407 N.W.2d 235 (1987). Therefore, the "legal conclusions of whether the performance was deficient and prejudicial based

4

on [the postconviction] factual findings ... are questions of law independently reviewed by this court." ***State v. Delgado***, 194 Wis. 2d 737, 750, 535 N.W.2d 450 (Ct. App. 1995).

¶13    We now turn to Swapsy's ineffective assistance of counsel claims.

## II. Trial Counsel Was Not Deficient in Counsel's Cross-Examination of Jones.

¶14    Swapsy contends that his trial counsel was ineffective for failing to more effectively impeach Jones for having given differing, inconsistent statements about whether Jones saw Swapsy in the vicinity of Jones's house around the time the fire was discovered and about where the argument took place between Swapsy and Jones before the fire. We begin our analysis by setting forth pertinent facts regarding this issue.

### A. Pertinent Facts.

¶15    At trial, Jones testified to the following on direct examination. As a result of a motor vehicle accident in the 1980s, Jones suffers from "occasional[] … memory issues." On August 26, 2016, Smith, a friend of Jones who frequently spent time at Jones's house, was at Jones's house because she had an argument with Swapsy. At that time, Smith and Swapsy were dating. Around midnight on August 26-27, Smith had an argument with Swapsy in the basement of Jones's house. Jones, who had been upstairs, went down to the basement. While in the basement, Swapsy told Jones that Jones was "the one I want to talk to" and, in a "loud" and "angry" manner, Swapsy told Jones: "I'm going to burn down your [mother fucker] house." Swapsy then left Jones's house and "rode away on a bike."

¶16     Sometime in the early hours of August 27, 2016, Jones saw flames coming from the back of his house.  Shortly before Jones became aware of the fire, Jones observed Swapsy ride past his living room window on a bicycle and "yelling stuff."

¶17     For context, we now mention three written reports.  The first is a police report prepared by Officer Doreteo Cano on August 27, 2016, which recounted the following:

> Jones told me he was not certain what had occurred [at about the time the fire started] but heard [a] male outside yelling.  Jones stated he could not understand what the individual was saying.  Jones said the voice sounded like an individual named "John" who he knew was in a former relationship with Charmaine Smith.  Jones said he did not actually see "John."  Jones told me after hearing "John" outside, he looked outside a back window and saw the back end of the residence on fire along with a bike that belonged to Smith.  Jones said he alerted everyone in the residence to evacuate.
>
> Jones told me he had no further information to share.

¶18     The second report was prepared on September 7, 2016 by Peter Trilling, a fire investigator with the City of Madison Police Department, on the cause of the fire.  That report recounted the following:

> Jones stated just prior to the fire, he was inside the residence and was "watching TV and dosing off."  Jones stated that he suddenly heard [Smith] and [one of Jones's roommates], who lives in the basement area, yelling; "He's back there and we can smell some gas, and the house is on fire."  Jones stated he heard the suspect yelling out something as [the suspect] was leaving but could not recall the specific words yelled.  Jones stated that at the same time, he suddenly was able to see flames from inside the house climbing up the rear exterior of his residence.

¶19 The third report was prepared by Detective Matt Nordquist on September 1, 2016, following an interview with Jones, which recounted the following:

> Jones said that [Swapsy] showed up around midnight and was very upset. [Jones] indicated that he and Smith had been in an area downstairs and that [Swapsy] began loudly banging on the basement door. Jones said that he did not recall what [Swapsy] was saying but that he recalled that he was mainly screaming at Charmaine Smith.
>
> Jones said at this point he opened the door and stepped outside. [Jones] indicated that he "stepped up" to [Swapsy] and that [Swapsy] looked him up and down. Jones said that [Swapsy] asked him if he knew Smith and Jones replied that she was his friend. Jones said that [Swapsy] then said something to the effect of "We were supposed to get married" and "I bought her a ring." Jones said that [Swapsy] also made a statement that he was going to come back and "burn down the house." Jones described that this altercation was only verbal and that they were in the back yard [sic] area to the rear of the house.

¶20 On cross-examination, Swapsy's trial counsel asked Jones if Jones recalled telling Officer Cano, on the night of the fire, that Jones did not see the person who started the fire. Jones denied telling Officer Cano that and stated that "[m]ore than likely," he told Officer Cano that he "saw [Swapsy] riding his bike past the window yelling some things." Trial counsel also asked Jones if he recalled telling Detective Nordquist a few days after the fire that "Swapsy came to [Jones's] door … [and Jones] stepped outside." Jones did not recall telling Detective Nordquist that he stepped outside when Swapsy came to his door and stated that he never "step[ped] outside," and his interaction with Swapsy was "in [his] home." Trial counsel did not cross-examine Jones about the statements Jones made to Trilling.

¶21 At the *Machner* hearing, trial counsel testified that counsel believed Jones to be "sympathetic" to the jury because of Jones's brain injury and that Jones "seemed confused" during direct and cross-examination. Because of that, counsel made a conscious decision not to "push[] [Jones] very hard" on inconsistencies between his testimony and his prior statements. Related to that, counsel also testified that he made a conscious decision not to question Trilling about Jones's failure to tell Trilling that he observed Swapsy at the scene of the fire. Counsel stated that Trilling's report was "silent" on whether Jones saw Swapsy around the time the fire started and that, because Trilling was "testifying about the fire investigation as an expert based on what Jones has said and how he testified without me knowing specifically what Trilling would have said … I chose not to go into that with him."

¶22 The circuit court determined that trial counsel was not deficient for failing to further impeach Jones for having given differing, inconsistent statements on whether he saw Swapsy around the time the fire was started. The court found that the jury was sufficiently informed on direct, cross, and re-direct examination of the inconsistencies between Jones's testimony and his prior statements. The court further found that: "It was simply not necessary [for counsel] to directly push Jones further on this point to effectively establish the potential for doubt in [Jones's] identification of [Swapsy]." The court did not expressly address whether counsel was ineffective for failing to impeach Jones with Trilling's report.

¶23 The circuit court also determined that trial counsel was not ineffective for failing to further impeach Jones for having given differing, inconsistent statements on whether the verbal altercation with Swapsy took place inside or outside Jones's house. The court stated that it was "unclear how convincing the jury that Jones was more accurate in his first statement would

8

benefit [] Swapsy…. [L]apses and faults in Jones'[s] memory was very well established and directly presented to the jury."

**B. Analysis.**

¶24    Swapsy asserts that effective counsel would have impeached Jones at trial with Officer Cano's police report and Trilling's fire investigation report by showing that, although Jones testified that he saw Swapsy riding away from his house on a bicycle around the time the fire started, Jones told Officer Cano that Jones was unable to identify the person Jones observed fleeing from the scene of the fire, and Trilling's report does not indicate that Jones saw anybody fleeing the scene. However, we agree with the State and the circuit court that Swapsy has failed to make a sufficient showing that trial counsel's failure to do so rises to the level of deficient performance.

¶25    To summarize, Jones testified that he suffered problems with his memory as a result of injuries Jones suffered in an automobile accident. Trial counsel testified that counsel believed Jones to be "sympathetic" because of Jones's brain injury, and counsel felt that Jones "seemed confused" during direct and cross-examination. Because of that, counsel made a "conscious decision" to "avoid pushing" Jones on cross-examination. Counsel also testified that he made a conscious decision not to highlight Jones's failure to tell Trilling that he saw Swapsy around the time of the fire because Trilling was testifying about his investigation into the cause of the fire as an expert "based on what Jones had said and how he testified," and counsel did not know specifically what Trilling would testify to.

¶26    Generally, trial strategy decisions reasonably based on law and fact do not constitute ineffective assistance of counsel. *See State v. Hubanks*, 173 Wis. 2d 1, 28, 496 N.W.2d 96 (Ct. App. 1992).

¶27    The circuit court has the opportunity to both see and hear counsel's presentation at trial and to evaluate it in conjunction with counsel's testimony at the *Machner* hearing.  If the circuit court finds that defense counsel's strategy was reasonable, we will not second-guess that strategy even if, in hindsight, it appears a different strategy would have been more effective. *See State v. Sholar*, 2018 WI 53, ¶54, 381 Wis. 2d 560, 912 N.W.2d 89 ("If trial counsel testifies at the *Machner* hearing that the choice under attack was based on a trial strategy, which the circuit court finds reasonable, it is 'virtually unassailable' and the ineffective assistance claim fails." (quoted source omitted)).

¶28    The circuit court found that it was reasonable under the circumstances for trial counsel not to press Jones further at trial on inconsistencies between his testimony and his prior statements purportedly made by Jones. Swapsy asserts in his reply brief that "it is folly to suggest a witness with a disability cannot be effectively cross-examined or impeached."  We agree with Swapsy's general observation.   However, simply because a witness with a disability can be effectively cross-examined and impeached does not mean that a reasonable defense strategy requires that defense counsel proceed beyond what counsel believes is effective in a particular situation.  Here, the jury was aware that Jones suffered problems with his memory, and counsel believed that Jones came off to the jury as confused.  As noted by the circuit court, a different attorney might have taken a different approach when cross-examining Jones by pressing Jones further about the inconsistencies between his testimony and his prior statements.  We agree with the circuit court that counsel's failure to do so in this

case does not fall below an objective standard of reasonableness under the totality of the circumstances. *See **State v. Maloney***, 2004 WI App 141, ¶23, 275 Wis. 2d 557, 685 N.W.2d 620 ("Trial counsel is not ineffective simply because an otherwise reasonable trial strategy was unsuccessful."). We now turn to Trilling's report.

¶29    The circuit court did not make a specific finding that trial counsel's strategic decision not to impeach Jones with Trilling's report was reasonable. However, given the jury's awareness of Jones's memory problems, counsel's belief that Jones appeared confused during his testimony, the fact that Trilling was testifying as an expert as to the cause of the fire, and counsel's lack of knowledge about what Trilling would testify to, we agree with the State that counsel's decision was reasonably based on law and fact and, therefore, does not constitute deficient performance. *See **Hubanks***, 173 Wis. 2d at 28.

¶30    Because we conclude that trial counsel did not perform deficiently by failing to press Jones further on inconsistencies between his prior statements to Officer Cano and Trilling and his testimony, we do not to reach the question of prejudice on those points. *See **Strickland***, 486 U.S. at 697.

¶31    Swapsy also asserts that effective counsel would have impeached Jones at trial with the report prepared by Detective Nordquist by showing that, although Jones testified that the argument with Swapsy took place in Jones's basement, Jones told Detective Nordquist that the argument took place in Jones's backyard. We need not address whether trial counsel's failure to impeach Jones with Detective Nordquist's report constitutes deficient performance because we conclude that counsel's failure to do so was not prejudicial. *See **id.***

¶32   As the circuit court determined, Swapsy has failed to show "how convincing the jury that Jones was more accurate in his [statement to Detective Nordquist] … would ever benefit [] Swapsy." Swapsy asserts that trial counsel's failure to impeach Jones with Detective Nordquist's report was prejudicial because "Jones's credibility would have been further suspect" had counsel done so. However, the jury was aware that Jones suffered from problems with his memory and was aware that Jones's claim that the argument took place inside his house was inconsistent with the testimony of other witnesses. Jones does not explain how additional evidence calling into question the reliability of Jones's recollection of where the argument took place would undermine confidence in the outcome of the proceeding in light of all the other evidence. *See id.* at 694. Accordingly, we agree with the circuit court that Swapsy was not prejudiced by counsel's failure to impeach Jones with Detective Nordquist's report.

## III. Trial Counsel Was Not Constitutionally Ineffective in Counsel's Cross-Examination of Kalish.

¶33   Swapsy contends that his trial counsel was ineffective because counsel failed to attempt to impeach Kalish with evidence of Kalish's fourteen criminal convictions.[3] Based upon a stipulation between the State and Swapsy, the circuit ruled that Kalish could be impeached with Kalish's prior convictions.

---

[3] To the extent that Swapsy also means to argue that his trial counsel was constitutionally ineffective for eliciting testimony from Kalish on cross-examination that, after speaking with Smith, Kalish informed a law enforcement officer that he believed that the individual involved in the verbal altercation with Smith and Jones on August 26-27, 2016, "was someone named John," we reject that argument. At the *Machner* hearing, trial counsel testified that he elicited this testimony in order to show that Smith "suggest[ed]" to Kalish that Swapsy had been the man with whom Smith had been arguing. Swapsy does not contend that counsel's strategy was based on an
(continued)

¶34    We begin by setting forth further pertinent facts.

## A. Pertinent Facts.

¶35    At trial, Kalish testified to the following facts. In August 2016, Kalish was living at Jones's house. Around midnight on August 26-27, 2016, Kalish was in his upstairs bedroom when he heard Smith arguing with an unknown man in the backyard of Jones's house. Kalish heard the unknown man state that he "was going to come back and light the house on fire." Kalish later saw a black, bald man riding away from the house on a bicycle. That description generally matches Swapsy's appearance.

¶36    At the *Machner* hearing, Swapsy's trial counsel acknowledged that he was aware at trial that Kalish had multiple criminal convictions. When trial counsel was asked why he did not question Kalish about his convictions, trial counsel stated that his failure to do so was an "oversight." The circuit court found that trial counsel's failure to impeach Kalish with his prior convictions was deficient performance. However, the court determined that Swapsy was not prejudiced by counsel's error. The court stated that the substantive evidence from Kalish's testimony was corroborated by Jones and the Howards. The court did not believe that impeachment of Kalish's credibility by prior convictions would have caused the jury to give no weight to not only Kalish's testimony, but also no weight to the testimony of Jones and the Howards.

---

irrational tactic or on caprice, and we therefore will not second-guess that strategy. *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93.

**B. Analysis.**

¶37    The State does not dispute that it was deficient performance for trial counsel not to impeach Kalish with Kalish's fourteen prior convictions. *See generally Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75 (stating that an argument asserted by the appellant and not disputed by the respondent may be taken as admitted). We therefore do not disturb the circuit court's determination that trial counsel's failure to impeach Kalish constitutes deficient performance.

¶38    We now turn to the next step under *Strickland* and determine whether Swapsy has sufficiently shown that he was prejudiced by trial counsel's error.

¶39    Swapsy's argument as to prejudice is that counsel missed "a golden opportunity to attack [Kalish's] credibility and to call into question his … general description of the arsonist." Swapsy does not explain why the result of the proceeding would have been different but for trial counsel's failure to impeach Kalish with evidence of the convictions. We could reject Swapsy's argument on the basis that it is not sufficiently developed. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (stating that generally this court does not consider conclusory and undeveloped assertions). However, for completeness, we address the merits of Swapsy's argument.

¶40    We agree with the State and the circuit court that Swapsy's failure to ask Kalish about his prior convictions was not prejudicial.

¶41    Kalish's testimony was far from the lynchpin of the State's case against Swapsy. To repeat, Kalish testified that he observed a black, bald man, which matches Swapsy's general appearance, riding away from Jones's house after the verbal altercation. However, Kalish did not identify Swapsy at trial as the person he saw and, in fact, testified that he was not able to recognize the man. Moreover, the key evidence to which Kalish testified was corroborated by the testimony of other witnesses. Jones testified that he observed Swapsy riding away from the house at the time the fire was noticed, corroborating Kalish's testimony that he observed a black, bald man riding away from the house around the time the fire started. Kalish also testified that he heard the man threaten to come back to Jones's house and light the house on fire. This was corroborated by Jones, as well as by neighbors Mark and Kennan Howard, who, as the circuit court found, "independently testified that they heard a male voice threatening to come back and light the house on fire." In short, Kalish did not provide any unique evidence.

¶42    Like the circuit court, we are not persuaded that impeachment of Kalish's credibility by his prior criminal convictions would have caused the jury to give no weight to Kalish, and also no weight to the testimony of Jones and the Howards. In his reply brief, Swapsy concedes that trial counsel's failure to impeach Kalish is, by itself, not prejudicial. However, he argues that, when "coupled with [counsel's] other errors," the cumulative effect of the errors is prejudicial. *See Thiel*, 264 Wis. 2d 571, ¶¶59-60 (gauging prejudice based on the cumulative effect of counsel's errors). We have concluded above that trial counsel was not deficient in counsel's cross-examination of Jones and, as we explain below, counsel was not deficient in his closing argument. Accordingly, we conclude that there is not a reasonable probability that, but for counsel's failure to

15

impeach Kalish with evidence of the prior convictions, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

### IV. Trial Counsel Was Not Deficient in His Closing Argument.

¶43 Swapsy asserts that his trial counsel performed deficiently in his closing argument, specifically by failing to "highlight" the failure of Charmaine Smith to testify at trial.

¶44 We repeat pertinent facts here for context. During opening statement, the State asserted that the jury would hear evidence that "[Swapsy] was angry and jealous because [Smith] … was living at the time … with … Jones" and that "Smith heard [Swapsy] as the fire was being lit." Smith was subpoenaed and a bench warrant was issued by the court; however, Smith failed to appear at trial.

¶45 Swapsy does not explain in his brief-in-chief how or why trial counsel's purported failure to "highlight" the State's failure to present evidence from Smith amounts to deficient performance. *See Associates Fin. Servs. Co. of Wis., Inc.*, 258 Wis. 2d 915, ¶4 n.3 (stating that this court does not consider conclusory assertions and undeveloped arguments). Moreover, as pointed out by the circuit court, trial counsel in fact argued that Smith's absence should contribute to a finding by the jury of not guilty. Trial counsel argued at closing:

> And [Smith is], I think, a missing factor here…. [C]ertainly other people testified that she was present at the house, that she's a regular there. Also the testimony was that … she's the connection between [] Swapsy and that house because she's there; otherwise, there's no beef, there's no problem, and, in fact, [Swapsy] doesn't know anyone else there.
>
> So it would have been interesting to get her perspective. Certainly given the number of perspectives we've had, I think that there is something missing there….

> … Well, it would have been interesting to hear what she had to say and when she had to say it.

¶46 In his reply brief, Swapsy asserts for the first time on appeal that counsel's response to Smith's absence was "tepid" and "ineffectual." Swapsy argues that his trial counsel should have instead argued that the State's opening statements were not evidence and that the State's assertion that Smith claimed that Swapsy had set the fire was not proven by the State. We need not address issues or arguments raised for the first time in a reply brief. *See **Richman v. Security Savings & Loan Ass'n***, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973). At any rate, trial counsel's argument regarding the failure of Smith to testify was sufficient to make the argument Swapsy asserts is lacking.

¶47 Accordingly, we reject Swapsy's argument that trial counsel was deficient for failing to raise a point that counsel in fact raised.

## CONCLUSION

¶48 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.