COURT OF APPEALS
DECISION
DATED AND FILED

March 7, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1254-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF5118

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

DIZZY DEAN WELLS, JR.,

      DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ and FREDERICK C. ROSA, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Dizzy Dean Wells, Jr., appeals the judgment convicting him of strangulation and suffocation, false imprisonment, and disorderly conduct with use of a dangerous weapon, all as a domestic abuse repeater. Wells also appeals the order denying his postconviction motion.[1] The sole issue on appeal is whether Wells' trial counsel was ineffective for not presenting the victim's phone records and a neighbor's testimony to impeach the victim at trial. We conclude that trial counsel did not perform deficiently in either regard and affirm.

## I. BACKGROUND

¶2    According to the criminal complaint, W.M. disclosed to police that Wells had assaulted her at his sister's residence on November 18, 2015. W.M. told police that on that date, Wells had been drinking with his brother and passed out. During the night, W.M. left the bedroom where she had been with Wells and went to the living room to turn off the television. When she returned, Wells was awake and questioned why she was in the living room with his brother. W.M. said that the argument turned physical and that Wells strangled her multiple times. At one point, W.M. took out her cell phone and called her sister; however, she threw her phone under the couch when Wells returned from the kitchen with a knife and threatened to kill her. W.M. told police that Wells would not let her leave the rest of the day. The State charged Wells with strangulation and suffocation, false imprisonment, and disorderly conduct with use of a dangerous weapon, all as a domestic abuse repeater.

---

[1] The Honorable Janet C. Protasiewicz presided over Wells' trial and sentencing. The Honorable Frederick C. Rosa presided over the postconviction proceedings.

¶3    The case proceeded to a jury trial. During its opening statement, the State told the jury it would present evidence that after the alleged assault on November 18th, Wells "refused to let [W.M.] out of his sight." The State elaborated, saying that the jury would learn the following:

> [That] Mr. Wells refused to let [W.M.] out of sight not just on November 8th, 2015, [sic] but on November 19th, 2015, November 20th, 2015, and up until November 21st, 2015. It was on that day that she was then in Waukesha with Mr. Wells that [W.M.] found her chance, and that's when a neighbor came over to her apartment. You're gonna hear how she was finally able to get away from Mr. Wells[.]

¶4    W.M. testified that the initial incident occurred during the evening on November 18th. She said that she and Wells were at the home of Wells' sister. W.M. said they were supposed to be sleeping, but they ended up fighting and Wells strangled her. W.M. testified that at one point she tried to run for the door, and Wells grabbed her and choked her again. W.M. said that Wells then went to the kitchen, returned with a knife, and asked her if she was ready to die.

¶5    W.M. testified that while Wells was in the kitchen, she grabbed her phone and called her sister. She said she then threw the phone under the couch. The jury heard the recording of the message W.M. testified that she left for her sister while Wells would not let her go.

¶6    W.M. testified that she did not leave the residence or attempt to get help because Wells would not let her leave his side. She said that they ultimately left the home together "the following evening," November 19th, and went to the home of Wells' mother. They were there a short time before going to W.M.'s home. When asked why she did not go get help, W.M. responded that it was because she "had to be with him."

3

¶7     According to W.M., the two were together at her home until November 21st.  On that date, W.M. told her niece what had happened, and her niece called the police.  On cross-examination W.M. reiterated that she believed the incident began on the evening of November 18th and that on the evening of November 19th, they went to the home of Wells' mother and then proceeded to W.M.'s apartment.

¶8     According to W.M., she and Wells were continuously together until November 21st.  W.M. testified that during the timeframe they were together, Wells would follow her to the bathroom and would not allow her to close the door. She said that he allowed her "no time alone."

¶9     Wells relied on an alibi defense, asserting that he was not with W.M. when the crimes allegedly occurred.   The defense called three witnesses to challenge W.M.'s account:  Karolyn Likeric; Frances Wells; and Gloria Wells.[2] Likeric, Wells' ex-girlfriend and the mother of his children, testified that Wells was at her home with their children—and not with W.M.—from November 18th through November 21st.

¶10    Frances, Wells' sister, testified that she was the tenant of the apartment where W.M. claimed the episode with Wells began on November 18th. Frances additionally testified that while she and Wells saw each other approximately once a month, neither he nor W.M. ever stayed overnight.  Frances said that to her knowledge, Wells and W.M were not at her apartment on November 18th.  She explained that Wells did not have a key, and he would not

---

[2]  To avoid confusion, we will refer to Frances and Gloria by their first names.

have been able to get into the apartment. Frances testified that on November 18th, she was staying with a friend and was not at home.

¶11 Gloria testified that she did not remember Wells and W.M. visiting her home on November 19th.

¶12 The jury found Wells guilty of all three counts. Wells sought postconviction relief, arguing that trial counsel was ineffective for failing to introduce evidence contradicting M.W.'s version of events. According to Wells, trial counsel's file contained evidence that was not presented at trial. Namely, two pages of highlighted telephone records associated with W.M.'s cell phone number, which showed numerous contacts from November 17, 2015, at 9:31 p.m. through November 20, 2015, at 11:23 p.m. Wells argued that the phone records contradicted W.M.'s claims that she could not call out for help because Wells would not let her out of his sight. He pointed out that the records revealed calls to W.M.'s phone from Wells' phone, which indicated that they were not together on the evening of November 19th.

¶13 Wells additionally filed police reports detailing Ann Brensel's statement to police on November 21st. Brensel told police that she spoke with W.M. on November 20th and learned for the first time that Wells was abusing her. Brensel additionally told police that W.M. allowed her to take pictures of W.M.'s injuries. Wells argued that Brensel's testimony would have further contradicted W.M.'s claim that she was unable to contact anyone for help or to report the matter to police from November 18th until November 21st because Wells was holding her captive.

¶14     At the ***Machner*** hearing, Wells' trial counsel testified.[3]     Trial counsel explained that he subpoenaed W.M.'s phone records.     When asked whether he believed those phone records would be helpful to the defense, trial counsel replied, "yes and no."   Trial counsel acknowledged that the phone records showed calls and texts occurring during the time W.M. claimed she was being held prisoner and prevented from having contact with the outside world. However, he said that he did not know who was using W.M.'s phone during that time, which he claimed was "one of the downfalls of cell phone records[.]"

¶15     Trial counsel additionally testified that he elected not to use the cell phone records at trial because the complaint indicated the offenses occurred on November 18th, and he did not know whether the events were alleged to have started late at night on November 17th into the early morning November 18th or late night on November 18th into the early morning of November 19th.   Trial counsel was concerned that there was a gap in phone activity starting in the early morning of November 19th, which would have been consistent with W.M.'s story that she was falsely imprisoned beginning on the night of November 18th/early morning of November 19th.  The phone records reflect no phone activity between 1:43 A.M. on November 19th to 5:41 P.M. that day.

¶16     Trial counsel said that he also decided not to use the cell phone records at trial because if he had provided them to the State, it would have allowed the State to fix "all their problems with their fuzzy timeline of when this occurred."  Trial counsel said that if he provided the documents to the State, he believed the State would have amended the complaint "to a very specific time

_____

[3] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

period when all of the evidence pointed to, so it would essentially improve their blurry timeline." Trial counsel testified that these were his reasons for believing the phone records would make things worse for Wells.

¶17 Trial counsel further testified that he was aware of Brensel's statement to police. He acknowledged that the communication between W.M. and Brensel on November 20th would have been evidence that W.M. was able to get help prior to November 21st. However, trial counsel elected not to call Brensel because she "would just corroborate what [W.M.] had said," and because she had taken pictures of W.M.'s injuries. Trial counsel said that he believed the defense "lucked out" when the State did not call Brensel as a witness. He explained:

> I mean, the thing is that it was an alibi defense, and so the theory of defense is he wasn't there. So if I have another— Ann Brensel coming to say, you know, "Here, [W.M.] came to me, and here are all the injuries," that would be another witness basically saying it happened and he was there[.]

Trial counsel conceded that there was no indication in Brensel's statement that she ever observed Wells at the apartment during the relevant timeframe.

¶18 During the hearing, an investigator for the defense testified that he reviewed the cell phone records and ascertained who various phone numbers were associated with. Using the information, the investigator made a list of phone activity occurring on W.M.'s phone during the relevant timeframe.

¶19 The postconviction court ruled that trial counsel's performance was not deficient and even if it was, no prejudice resulted.

## II. DISCUSSION

¶20     Wells renews his claim that his trial counsel was ineffective for failing to introduce the phone records and for failing to call Brensel as a witness, evidence that he contends would have refuted W.M.'s narrative.  After setting forth the applicable legal standards, we will address each of his claims in turn.

¶21     Our analysis of his claims involves the familiar two-pronged test: the defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness."  *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62.  "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Id.* (citations and one set of quotation marks omitted).

¶22     The court "need not address both components of this inquiry if the defendant does not make a sufficient showing on one."  *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.  "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently."  *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶23     Wells argues that trial counsel's stated reasons for not using the cell phone records "do not withstand any scrutiny" and were not reasonable. Similarly, Wells contends that trial counsel's logic for not using Brensel's

statement to police is flawed. He argues that in her statement to police, Brensel did not claim that she saw Wells at W.M.'s apartment. Consequently, the information Brensel would have offered would not have been inconsistent with his defense that W.M. was falsely accusing Wells of the crimes. According to Wells, "[a]ny benefit to not calling Brensel was *de minimis*." In contrast, he argues that the advantage of calling her would have resulted in "severe damage" to W.M.'s credibility.

¶24 To prevail on the issue of whether trial counsel's performance was deficient, Wells needs to overcome a strong presumption of reasonableness regarding counsel's strategy:

> Reviewing courts should be highly deferential to counsel's strategic decisions and make every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. This court will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment. In fact, where a lower court determines that counsel had a reasonable trial strategy, the strategy is virtually unassailable in an ineffective assistance of counsel analysis.

*State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (citations and quotation marks omitted).

¶25 We cannot conclude that trial counsel's decision not to present the cell phone records or call Brensel as a witness was an irrational trial tactic or based on caprice. The postconviction court found that trial counsel subpoenaed the victim's phone records, conducted a "cost benefit analysis" looking at the pros and cons of introducing the evidence, and ultimately decided against using the records based on his conclusion that the records would hurt Wells' case more than it would have helped it. The postconviction court made similar findings with

9

regard to trial counsel's rationale for not calling Brensel as a witness, which included concerns that she would support rather than undermine W.M.'s testimony particularly as to her injuries. The postconviction court found that trial counsel elected not to call Brensel "even though evidence could have been put in that [Brensel] did not see Mr. Wells at [W.M.]'s apartment."

¶26 Ultimately, the postconviction court found that "there was a discussion and there was a careful thought process that was engaged in to arrive at the decisions that were made[.]" These are factual matters that we will not disturb unless clearly erroneous. *See State v. Maloney*, 2004 WI App 141, ¶8, 275 Wis. 2d 557, 685 N.W.2d 620 ("The trial court's determination of what counsel did or did not do, along with counsel's basis for the challenged conduct, are factual matters we will not disturb unless clearly erroneous."). We conclude that the decision not to present the evidence at issue does not constitute deficient performance. *See State v. Harper*, 57 Wis. 2d 543, 557, 205 N.W.2d 1 (1973) ("[O]ne should not by hindsight reconstruct the ideal defense. The test of effectiveness is much broader and an accused is not entitled to the ideal, perfect defense or the best defense but only to one which under all the facts gives him reasonably effective representation.").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).