**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 30, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1130-CR**

Cir. Ct. No. **2019CF72**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

NOAH D. CLARK,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Washburn County: J. MICHAEL BITNEY, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Noah D. Clark appeals from a judgment of conviction, entered following a jury trial, for intentional physical abuse of a child,

felony bail jumping, and disorderly conduct. He also appeals from the circuit court's order denying his motion for postconviction relief. Clark argues that he is entitled to a new trial because he received constitutionally ineffective assistance of counsel and because the court erroneously admitted evidence regarding the nature of his prior convictions. For the reasons that follow, we reject all of Clark's arguments on appeal and affirm.

## BACKGROUND

¶2 The State charged Clark with one count each of strangulation and suffocation, felony bail jumping, disorderly conduct, and physical abuse of a child as the result of Clark's altercation with his then-girlfriend's fourteen-year-old son. At the time, Clark had been in a long-term relationship with Amy, and the altercation occurred at their shared residence, where Amy's son from a previous relationship, Trevor, also resided.[1] The case proceeded to a jury trial. Amy, Trevor, and two law enforcement officers testified for the State.

¶3 On the day in question, Clark and Amy first got into an argument when Clark accused Amy of failing to return a friend's truck on time. Clark returned home at around 5:00 p.m. to retrieve the vehicle, at which time he "kicked [the locked] door in" and "was yelling and screaming" at Amy and "calling [her] names."

¶4 Clark then left and did not return to their home again until approximately 11:00 p.m. When Clark did return, Amy and Trevor were on the

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms when referring to the victim and his mother in this case. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

couch watching a movie. According to Amy, it was clear that Clark was intoxicated. She explained that Clark "came in calling [Trevor] names and belittling him, telling him what a little pussy he was[,] and [that] he expected more out of him," allegedly due to Trevor's mental health difficulties and previous suicide attempt. Trevor responded, "I expected more from [you] and [you're] a grown-ass man." Clark then went upstairs, threw a vacuum cleaner over the balcony, and came back downstairs "saying he was going to kill" Trevor. In response, Trevor "grabbed a hatchet [he] had by the couch and lifted it up and stood there." According to Trevor,

> [Clark] came at me and pushed me down into the couch and started choking me and ripped the hatchet out of my hand and held it at me. And then he dropped the hatchet and started hitting me, and punching me, and kneed me a couple times. And when he was done doing that, he grabbed some cans that were sitting on our coffee table. And they were alcohol cans, and he smashed them on my head. And while this was happening, [Amy] was screaming at him to stop and trying to call the cops.

¶5 Officers later found Clark at a friend's house, and he was arrested. The arresting officer reported that Clark smelled of alcohol.

¶6 Clark testified in his own defense, asserting that he acted in self-defense. According to Clark, Trevor was drunk on the couch when he returned home, and when Clark expressed to Amy that he did not "condone" that behavior, Amy and Trevor engaged in a verbal altercation with him. Clark stated that he went upstairs to pack a bag and leave, but when he came downstairs, Trevor was armed with the hatchet and was "blocking the door." Clark testified that he attempted to disarm Trevor and that Clark cut his hand with the hatchet in the process. He explained that Amy was also "scratching me and hitting me on my back." Clark denied hitting Trevor in the face, hitting Trevor with cans,

3

throwing the vacuum off the balcony, or damaging any doors. According to Clark, he was not intoxicated during this encounter.

¶7 The jury acquitted Clark of the strangulation and suffocation charge, but it found him guilty of the remaining charges. Clark then filed a postconviction motion for a new trial, alleging instances of ineffective assistance of counsel and asserting that the circuit court erroneously admitted evidence regarding the nature of his prior convictions at trial. The court held an evidentiary *Machner*[2] hearing on the motion, during which a potential defense witness and defense counsel testified. The court denied Clark's motion. Clark appeals.

## DISCUSSION

*I. Ineffective Assistance of Counsel*

¶8 It is well established that criminal defendants have a constitutional right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on his ineffective assistance claim, Clark must show both that defense counsel's performance was deficient and that the deficient performance prejudiced his defense. *See id.* at 687. If Clark fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *See id.* at 697. Here, for the reasons that follow, we conclude that Clark has failed to establish that defense counsel performed deficiently, and we therefore need not address the prejudice prong.

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶9     To prove deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88.    We are "highly deferential to the reasonableness of counsel's performance." *State v. Jenkins*, 2014 WI 59, ¶36, 355 Wis. 2d 180, 848 N.W.2d 786.    As such, we "must make every effort to reconstruct the circumstances of counsel's challenged conduct, to evaluate the conduct from counsel's perspective at the time, and to eliminate the distorting effects of hindsight." *Id.*    "[T]here is a strong presumption that [defense] counsel's conduct 'falls within the wide range of reasonable professional assistance.'"    *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted).

¶10     Accordingly, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference." *State v. Balliette*, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334.    Our role is not to second-guess a reasonable trial strategy unless it is based on either an irrational trial tactic or upon caprice rather than judgment.    *Breitzman*, 378 Wis. 2d 431, ¶65.    "In fact, where a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.'"    *Id.* (citation omitted); *see also* *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable ….").    And "[c]ounsel need not be perfect, indeed not even very good, to be constitutionally adequate." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶11     Whether counsel rendered ineffective assistance is a mixed question of fact and law. *State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325.    We will uphold the circuit court's findings of fact unless they are

clearly erroneous, but we independently review whether those facts are sufficient to establish ineffective assistance. *Id.*

¶12 Clark first argues that defense counsel was ineffective for not calling Antoinette Weller as a witness at trial. Weller provided an initial statement to a defense investigator approximately six months before the trial. In her statement, Weller—a mutual friend of Amy and Clark—described Amy and Clark's relationship with each other as "tumultuous." Weller further relayed that Amy admitted to her that Amy lied to law enforcement about the incident. Weller also described how she observed Amy sending messages to herself from Clark's Facebook account and stated that Amy then sent screenshots of these messages to law enforcement. Finally, Weller explained that she also witnessed Amy providing Trevor alcohol and marijuana.[3] Weller testified to the same at the *Machner* hearing. Clark claims that Weller's testimony would have corroborated his claim of self-defense and that "[t]here was no rational strategic reason for failing to use Weller's testimony."

---

[3] On appeal, Clark also discusses a follow-up interview with Weller that occurred in October 2021—nine months after the trial—where Weller affirmed her previous statement and added some information. The State argues that Weller's October 2021 statement "could not have been relevant to [defense counsel's] decision making" because "[t]he second investigation did not exist at the time of [counsel's] decision, and it therefore has no bearing on this [c]ourt's evaluation of Clark's claim."

In reply, Clark does not dispute the State's argument, stating only that "[t]here was very little difference between what Weller told the private investigator after the conviction and sentence and what she told the [State Public Defender] investigator before trial." Clark explains that "[t]o the extent there was additional information, it might be newly discovered evidence but Clark has not argued that it met the criteria for that." Further, Clark does not argue that his defense counsel performed deficiently by failing to conduct a more thorough investigation. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Thus, we will not address Weller's second statement further.

¶13 Defense counsel testified at the **Machner** hearing that he knew about Weller's statement prior to trial, he reviewed the statement, he subpoenaed Weller to ensure she was available to testify, and he ultimately made the strategic decision not to have Weller testify at trial. Counsel explained that he spoke with Weller on the day of trial, and he asked

> her some basic questions and she struggled to kind of give a coherent statement. She struggled to be directed. A lot of what she had to say had to do with drug use of [Trevor] and his mother. And the timeline didn't really work out…. I didn't think she would hold up to cross-examination and I thought that she would not be found credible by the jury.

According to defense counsel, he "really struggled" with the decision of whether to call Weller to testify "because it was clear that she had something positive to say for [Clark], which is why [counsel] put her on [the] witness list. It's why [he] didn't rule her out and make a final decision on that until even the day of trial." In the end, counsel believed that if Weller was found incredible by the jury, then that "may cause the jury to not believe" Clark and "may make us seem desperate." Defense counsel testified that he explained this reasoning to Clark and that Clark understood and agreed (at the time) with the decision not to call Weller.

¶14 We conclude, as did the circuit court, that defense counsel's choice not to call Weller was a reasonable trial strategy and did not constitute deficient performance. Defense counsel's testimony provided persuasive evidence that counsel made an informed, reasonable, strategic decision not to call Weller. Accordingly, counsel's decision, based on a thorough explanation of his rational thought process, is "given great deference," *see Balliette*, 336 Wis. 2d 358, ¶26, and "is virtually unassailable in an ineffective assistance of counsel analysis," *see State v. Maloney*, 2004 WI App 141, ¶23, 275 Wis. 2d 557, 685 N.W.2d 620; *Strickland*, 466 U.S. at 690. Defense counsel further testified that Clark agreed

7

with that decision at the time. *See* **Strickland**, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Therefore, defense counsel did not provide constitutionally ineffective assistance by deciding not to call Weller to testify at trial.

¶15     Next, Clark argues that defense counsel performed deficiently by failing to use photos of Clark's injuries as evidence at trial. Days after the incident, an individual named Emily Davis—who was also in a relationship with Clark at this time—took photographs of Clark's injuries with her phone camera. According to Clark, "[t]hose photos show not only bruises and cuts of a defensive nature, they also demonstrate that Clark received significantly more physical injuries than" Trevor. Clark also explained that "[t]he photos showed a cut Clark received from the hatchet, thus corroborating that the edge of [the] hatchet was facing towards Clark rather than" Trevor. Again, Clark claims that there is "no conceivable strategic reason for failing to use [the photographs] at trial" as "[t]hey corroborate Clark's self-defense theory and his fear of attack."

¶16     The circuit court concluded, and we agree, that defense counsel's strategic decision not to use the photographs at trial was reasonable. At the **Machner** hearing, defense counsel explained his decision not to use the photographs, stating that there was not "any significant dispute" that Clark "was cut during the course of this altercation" and that Clark suffered bruises from the struggle. Defense counsel made his decision not to introduce the photographs because he believed that they would not have been particularly helpful as "[i]t wasn't disputed that he had an injury to his hand" and "the photographs seemed to show a healing injury over time." The court also expressed skepticism when it denied Clark's motion as to whether the photographs would have been admissible.

In particular, the court was concerned that absent expert testimony, Clark would have been unable to establish that the photographs show "defensive wounds versus just wounds that occur or bruises that occur during the course of a struggle," and because there was no dispute that there was a struggle, "the absence of the photographs was [not] deficient."

¶17    Defense counsel provided a reasonable strategic basis for not introducing the photographs given the fact that whether Clark sustained injuries during the struggle was not at issue during the trial and given that the photographs were questionably admissible.  Clark has once again failed to overcome the presumption of reasonable representation; therefore, his defense counsel did not provide constitutionally ineffective assistance by choosing not to introduce the photographs.

*II. Clark's Prior Convictions*

¶18    Finally, Clark argues that "[t]he circuit court erred when it allowed the State to reveal the nature of Clark's past convictions because they did not rebut his testimony; nor did the probative value of revealing the nature of the convictions outweigh the prejudicial effect."  On direct examination, Clark was asked how he felt about the incident with Trevor.  Clark responded:

> I felt horrible.  I hated every bit of it….  I felt like he was my son.  I raised him like a son.  And I felt like … I must have messed up somewhere for him to act like that towards anyone.  And … I guess reflection probably, you know, when it was all over, I wondered if that was all his drinking.  And I was worried and concerned.  And … I couldn't talk to him about it because I was accused of hurting him *in a way that I would never hurt anybody like that*, especially a child.

(Emphasis added.)

9

¶19    In response, and prior to cross-examination, the State argued to the circuit court, outside the presence of the jury, that Clark's statement "opened the door for further impeachment" because his testimony was "inconsistent with his criminal record."  According to the State, Clark was "testifying about his own positive character never acting in a way like that when he has prior convictions for intentionally pointing a firearm at a person times two, intimidating a victim times two, domestic disorderly use of a dangerous weapon, another domestic disorderly," and battery.  The State explained, "I believe that by him characterizing his own character as such, as being a peaceful man with that criminal history, that that opens the door to address those issues to directly contradict that statement."

¶20    The circuit court agreed with the State.  It explained that Clark's testimony "opens the door, at least to a limited questioning from [the State]," and it allowed the State to ask whether Clark had ever been convicted of a crime and whether "at least two of those [convictions] involved domestic abuse and assault and battery convictions."  If Clark responded, "Yes," to both those questions, "then that ends the inquiry."  The court's intent was to avoid "hav[ing] a bunch of trials within a trial," and it limited the discussion to the relevant convictions.  Ultimately, the court reasoned that "it would be unfair and unjust to deprive the State of at least some limited inquiry."  The State followed the court's ruling, and Clark admitted to the convictions.

¶21    The State addressed Clark's prior convictions again during closing arguments in response to defense counsel reiterating that Clark "felt horrible about what happened afterward."  In rebuttal, the State observed:

> [Defense counsel] had discussed how Noah Clark, when he
> sat in that chair and he gave us his evidence, that he said
> how he left and he felt horrible.  Then he also said I would

10

> never hurt anyone like that…. [B]ut yet he has two convictions for domestic disorderly and domestic battery. He has done that before.

¶22 The general rule in Wisconsin is that "[e]vidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." WIS. STAT. § 904.04(1). However, pursuant to § 904.04(1)(a), an accused may produce evidence of his or her good character as substantive evidence of his or her innocence, but if an accused offers evidence of his or her character, then the State may "rebut the same." Sec. 904.04(1)(a). "[T]he State's introduction of character evidence is limited to that which rebuts the character trait being established …." *State v. Brecht*, 143 Wis. 2d 297, 322-23, 421 N.W.2d 96 (1988).

¶23 Additionally, the State's rebuttal character evidence must also meet traditional principles of admissibility. For example, only relevant evidence is admissible at trial, which is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. §§ 904.01, 904.02. However, relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." WIS. STAT. § 904.03.

¶24 "Unfair prejudice occurs when the evidence 'influence[s] the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.'" *State v. Gutierrez*, 2020 WI 52, ¶35, 391 Wis. 2d 799, 943 N.W.2d 870 (alteration

in original; citation omitted). Nevertheless, "[t]he determination of unfair prejudice must be made with great care because '[n]early all evidence operates to the prejudice of the party against whom it is offered…. The test is whether the resulting prejudice of relevant evidence is *fair or unfair*.'" ***State v. Payano***, 2009 WI 86, ¶88, 320 Wis. 2d 348, 768 N.W.2d 832 (second alteration in original; citation omitted).

¶25 "The admission of evidence is subject to the circuit court's discretion." ***State v. Ringer***, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448. We "will not disturb the circuit court's decision to admit evidence unless the court erroneously exercised its discretion." ***Id.*** Importantly, we will not substitute our discretion for that of the circuit court, and we will "look for reasons to sustain a [circuit] court's discretionary decision." ***Gutierrez***, 391 Wis. 2d 799, ¶27 (citation omitted).

¶26 On appeal, Clark argues that the circuit court erroneously exercised its discretion by admitting evidence about the details of his prior convictions because that evidence is not relevant. According to Clark, his "statement was highly qualified" because Clark stated that he would never hurt anyone "in [the] way" he was accused of hurting Trevor. Therefore, Clark asserts that revealing the nature of his prior convictions "does not contradict Clark's testimony." Clark also disagrees that his testimony related to a "positive character" trait of "being a peaceful man." According to Clark, "he did not say, for example, that he never assaulted anyone, never hurt anyone, or that he was, in fact, a peaceable man."

¶27 While we believe that this is a close case, we conclude that the circuit court did not erroneously exercise its discretion by permitting the State to inquire about the nature of Clark's prior convictions. Clark testified that he "was

accused of hurting [Trevor] in a way that I would never hurt anybody like that, especially a child." Thus, Clark testified that he would never strangle and suffocate or cause intentional harm to anyone, especially to a child. That testimony absolutely was a reflection on Clark's character that he introduced to the jury. Absent a response from the State, the jury would be permitted to consider Clark's claim that his character was such that he "would never hurt anybody" "in [that] way," when he had in fact battered someone previously. We do not agree that the jury would have considered Clark's statement in the same narrow manner that Clark now posits on appeal. Therefore, the court properly determined that a limited response from the State was warranted under Wis. Stat. § 904.04(1)(a), because Clark's testimony went directly to his character, his credibility, and was relevant to an issue under consideration.

¶28 Clark next argues that the circuit court "never explained how the prior convictions were probative and consequently, never considered whether the prejudicial effect outweighed the probative value under Wis. Stat. § 904.03." According to Clark, "the prior convictions had no probative value or very little, [but] the prejudicial effect of domestic battery and disorderly conduct convictions in the context of a domestic battery case is clear."

¶29 We conclude that the circuit court properly exercised its discretion in limiting the State's presentation of the nature of the prior convictions to account for the balancing required to admit the evidence. "The fact that the [circuit] court did not expressly state the name of [Wis. Stat. §] 904.03 or use the words 'weighing' or 'balancing' or some similar word or words to describe its analysis, does not mean that the court failed to exercise its discretion." *State v. Gary M.B.*, 2004 WI 33, ¶26, 270 Wis. 2d 62, 676 N.W.2d 475. Our case law does not "recognize such a 'magic words' argument." *Id.* Instead, "an appellate court

can … affirm[] if the record indicates that balancing is implicit from the circuit court's determination." *Id.*

¶30 In this case, although Clark had ten prior convictions, the circuit court limited the State's cross-examination to details regarding only two of those convictions, which were both related to Clark's specific character testimony and relevant to the charges against Clark. Further, as noted above, the State was not granted an unlimited discussion regarding those convictions. The court allowed the State to ask Clark a "yes or no" question, and if Clark responded affirmatively, then no further discussion was authorized. Finally, the court provided a limiting jury instruction regarding the nature of Clark's prior convictions. *See id.*, ¶29; *see also* **State v. Hurley**, 2015 WI 35, ¶89, 361 Wis. 2d 529, 861 N.W.2d 174 ("Limiting instructions substantially mitigate any unfair prejudicial effect."). That instruction stated:

> Evidence has also been received that the defendant himself, Mr. Clark, has—has been previously convicted of crimes. Again, this evidence was received solely as it bears on his character for truthfulness as a witness. It must not be used for any other purpose. And, particularly, you should bear in mind that a criminal conviction at some prior time is not proof of guilt of the offenses currently charged.

The jury is presumed to follow instructions provided by the court. **State v. LaCount**, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.

¶31 Clark responds that the circuit court's jury instruction did not prevent unfair prejudice because it was "a boilerplate instruction … making no mention of 'rebutting' Clark's statement." Clark, however, never objected to or requested a different jury instruction. *See* **State v. Huebner**, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. He also does not include this issue within his ineffective assistance of counsel claim. In any event, the issue before this court is

whether the circuit court erroneously exercised its discretion in admitting the nature of the prior convictions, not the propriety of the cautionary jury instruction. We conclude that the court's instruction that "a criminal conviction at some prior time is not proof of guilt of the offenses currently charged" was sufficient to mitigate any unfair prejudicial effect.

¶32    In conclusion, the circuit court's decision limiting both the number of and the discussion of the nature of the prior convictions in conjunction with the limiting jury instruction demonstrates that the court implicitly balanced the probative value of the evidence against its prejudicial effect and properly exercised its discretion in admitting the evidence. *See **Gary M.B.***, 270 Wis. 2d 62, ¶¶28-29. Thus, Clark is not entitled to a new trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.